State of Iowa, Appellee, v. Frank Fountain, Appellant.

**INTOXICATING LIQUORS: Possession of Liquors—Revenue Stamp**
1 **Presumption.** Presumption of guilt of unlawful sale and keeping for sale is raised both by the finding of liquors in a place of business, and by the possession of an internal revenue stamp for such liquors. (Sec. 2427, Code, 1897.)

**INTOXICATING LIQUORS: Evidence—Relevancy, etc.** Evidence
2 bearing upon defendant's want of knowledge of the possession of liquors is wholly irrelevant, when it is conceded that defendant had full knowledge.

**EVIDENCE: How Strangers Would Testify.** What another person
3 would testify to, if asked as to a certain matter, is wholly incompetent.

**INTOXICATING LIQUORS: Intent Not Element of Sale** The matter
4 of *intent* is not involved in an accusation of *selling* intoxicating liquors.

**INTOXICATING LIQUORS: ''Gift'' as Violation.** A "gift" of
5 intoxicating liquors to one's employee, *in order to induce the employee to continue work,* is a violation of that part of the statute which prohibits gifts of such liquors "in consideration * * * of any services or in evasion of the statute." (Sec. 2382, Code Supp., 1913.)

**TRIAL: Instructions—Defining Terms.** Failure, in the absence of
6 a request, to define the term "evasion of the statute," is not error.

**INTOXICATING LIQUORS: Place Made to Resemble Saloon.** The
7 jury may, on the issue whether a so-called "Temp Bar" was a place for the unlawful sale of intoxicating liquors, take into consideration the fact that the place was equipped in all respects as intoxicating liquor saloons were formerly equipped.

**INTOXICATING LIQUORS: Offenses—Judgment—Modification.**
8 Fine reduced from $1,000 to $600.

*Appeal from Polk District Court.*—Charles Hutchinson, Judge.

June 24, 1918.

THE defendant was convicted of maintaining a liquor nuisance, and appeals.—*Affirmed.*

*T. L. Sellers,* for appellant.

*H. M. Havner,* Attorney General, *F. C. Davidson,* Assistant Attorney General, *C. G. Watkins,* and *Ward C. Henry,* County Attorney, for appellee.

LADD, J.—The defendant, with one Roberts, was indicted, April 6, 1917, for having maintained a place wherein intoxicating liquors were sold and kept with intent to sell. Both were found guilty. Roberts was granted a new trial, and a fine of $1,000 was imposed upon defendant, Fountain.

1. INTOXICATING LIQUORS : possession of liquors : revenue stamp : presumption.

I. He challenges the sufficiency of the evidence to sustain his conviction. With one De Bolt, he operated what is known as a "Temp Bar," at the corner of West Second Street and Grand Avenue, in the city of Des Moines, and for himself, conducted a garbage business. On March 21, 1917, policemen searched the premises for intoxicating liquors, and found two pints of whisky on the shelf under the bar, and, back of the bar, a government liquor license, in De Bolt's name; and, in an old store building, nearly half a block distant, where he kept his garbage cans, found a garbage can, among about 100 others, in which there were 14 pints of whisky in pint bottles; and in the hay, another pint of whisky, also 12 or 14 empty bottles; and in the desk of his office, 7 bottles of whisky.

De Bolt testified that he had purchased the two bottles of whisky found under the bar, to take to his wife, who was sick; and Fountain explained that the government license had been procured under the advice of "revenue men," in order to avoid trouble, and that, after consulting one Weimer, the license was procured. He denied having knowingly or intentionally permitted the clerk, barkeeper, em-

ployee, or partner to sell intoxicating liquors at the place or at the time in question, and swore that he did not attend the bar; that he bought the liquor found in the old storeroom, or barn, the night before, but not with intent to sell or to have it sold, by himself or anyone else; that this liquor came in two packages, which he placed in the can, and some of the boys working there took two or three bottles out; that he bought this liquor from somebody who came around with it; that he intended to take that in his desk home with him; and further:

"I always kept whisky, and gave them (the men employed in the garbage business) what they wanted. It is hard to get a fellow to work in the scavenger business unless you give them a little drink, and that is why I appeal this case. I have been 30 years in the business, and have always kept liquor for them. There are lots of fellows you cannot get to work unless you give them a little of whisky to drink. Some days it was raining, and they came in, cold and wet, and I would get out a bottle; and sometimes I would bring a few into the office, so they would not know where it was. If I left it out where they could get their hands on it, they might drink it all up at once."

He testified, further, that he got no pay from the boys, and that De Bolt knew nothing of this. It is manifest, from this recital of the evidence, that the issue as to defendant's guilt was for the jury. Presumption thereof was raised, both by the finding of the revenue stamp and by the keeping of intoxicating liquors. Sections 2382, Code Supplement, 1913, and 2427, Code. Whether his explanation was sufficient, was for the jury to determine. If kept for the purpose of illegal sale, this was done about as one would in concealing it from the officers of the law. On the other hand, if it was kept solely for personal use, or for the purpose of giving it away, without any consideration what-

ever, the defendant should not have been convicted. The issue, as said, was solely for the jury.

II. One Dawson operated a horse-shoeing shop, next to the old barn, or store; and, owing to objection's being sustained, was not permitted to say whether he had observed any whisky sales at the "Temp Bar," or per-

2. INTOXICATING LIQUORS: evidence, relevancy, etc.

sons purchasing whisky or congregating there, or persons going there, or anything indicating that liquors were being sold there, or persons going in and out of there for the purpose of trading or purchasing anything, or whether he attempted to purchase whisky and was refused, or whether he saw anyone **drink** intoxicating liquor there. The several rulings were correct. The answers, if given by Dawson, would have had no bearing on the issue, except as to defendant's want of knowledge, and whether he had obtained intoxicants there,— neither of which the State had sought to prove. The character of the general business carried on by defendant and De Bolt was not in dispute, so that this did not furnish ground for the interrogatories; and, in any event, to inquire into the details of their business, save as these related to the sale or keeping for sale of intoxicants, was not relevant to the issues. There was no error.

III. The defendant was asked:

"Was there ever any intent on your part that intoxicating liquors should be sold at that place? A. Mr. Roberts would testify that I have often told him not to let a man have a bottle there."

3. EVIDENCE: how strangers would testify.

On motion, this was stricken, as incompetent, irrelevant and immaterial. The ruling was correct; as it was immaterial what Roberts might, but did not, testify to.

"Q. Did you instruct your barkeeper to not sell intoxicating liquors? (Objection as suggestive was sustained.) Q. What instructions did you give your barkeeper with

reference to selling intoxicating liquors at that place? (The same objection was sustained.)"

These rulings are said to have been erroneous; but, if so, this was obviated by his testimony subsequently that he never permitted any employee or barkeeper to sell intoxicating liquors at the place. Moreover, the matter of intent is not involved in an accusation of selling intoxicating liquors. If the defendant or anyone else for him actually sold intoxicating liquors on the premises, he would be guilty, whether he intended so to do or not.

4. INTOXICATING LIQUORS: intent not element of sale.

IV. In the third instruction, the court directed the attention of the jury to the law under which the defendant was indicted, to his admission that he was owner of the "Temp Bar" building and of the old storehouse where intoxicating liquors were found, and then instructed that, in order to find him guilty, as charged in the indictment, the jury must find from the evidence, beyond reasonable doubt, that defendant (1) used or assisted in the use of the premises for the purpose of selling intoxicating liquors; or (2) kept or assisted in keeping, for himself or others, in said premises, intoxicating liquors, for the purpose of selling, exchanging, bartering, or dispensing same, or giving same in consideration of services, or "in evasion of the statute;" and (3) continued to use such premises for the purpose of keeping intoxicating liquors with intent to sell the same. Later on, the jury was told that there was no evidence justifying a finding that Roberts "gave intoxicating liquors to anyone in consideration of services or in evasion of the statute." This instruction is criticised, for the reason, as is said, that there is no evidence that appellant gave liquor "for a consideration," and that the clause "in evasion of the statute" should have been explained and its meaning expounded to the jury; and that the suggestion with reference to Roberts

5. INTOXICATING LIQUORS: "gift" as violation.

impliedly advised the jury that there was evidence against Fountain tending to show a gift by disposing of intoxicating liquors, "in consideration of services or in evasion of the statute."

There was such evidence; for Fountain testified, in substance, that he purchased the whisky with the design to give most of it to the men in his employment, in order to induce them to continue working for him. His testimony on the subject has been set out. He claimed to have gotten no pay from the boys for the whisky furnished them. The tender solicitude of such a philanthropist for his employees is always very touching. This scheme of reducing expenses in the employment of laborers formerly was quite extensively pursued. The roustabout about the saloon or tavern was paid in drinks; and in numerous large enterprises, intoxicants were regularly issued to employees in lieu of a portion of their wages, always to the profit of employers. But the plan has been quite generally abandoned. Under modern methods, payment of fair wages, gauged according to the character and amount of labor exacted, is required, and the workmen are allowed to determine for themselves how and for what it shall be spent; and if defendant, by pandering to the appetites of men, induced them to labor as scavengers at wages received in more cleanly employments, and thereby turned into his coffers the difference between such wages and what he otherwise must have paid, less the cost of the whisky given to them, he is not in a situation to plead that this was a mere giving away, or that it was not disposing of it for a consideration.

We are of opinion that whether he was keeping the whisky with intent to sell, or to give to his employees solely as a gratuity, or to induce them to continue in his employment at lower wages than otherwise he must have paid, was for the jury to decide. As remarked in *State v. Hutchins,* 74 Iowa 20:

"The section evidently requires the statute to be so construed as to forbid all gifts for a consideration, direct or indirect, or remote, or made with the purpose of receiving anything in return. Thus, when liquor is given to those who buy other things, or to induce trade or attract custom, or in a hundred different ways which the ingenuity of law-breakers has or may devise to defeat the law, it is to be regarded as a violation of statute."

Nothing said in *State v. Flemming,* 86 Iowa 294, or *State v. Bernstein,* 129 Iowa 520, is inconsistent herewith. We do not say that giving whisky to his employees was a mere scheme to keep down their wages and obtain work at a reduced cost, but that such a conclusion was open to the jury.

What is meant by "in evasion of the statute" might well have been explained to the jury; but omission so to do, in the absence of a request, ought not to be denounced as error. Jurors are presumed to understand words in common use. *State v. Penney,* 113 Iowa 691. These need not be defined, in the absence of a request so to do.

6. TRIAL: in-structions: defining. terms.

V. The jury was told, in substance, that, if what was known as the "Temp Bar" was equipped in all respects as a saloon, they might take this circumstance into consideration in determining whether the place was used for the purpose of keeping for sale or selling intoxicating liquors.

7. INTOXICATING LIQUORS: place made to resemble saloon.

The evidence disclosed that the bar was "almost a perfect imitation of the saloon bar, and has a keg like a saloon, and tubes; and the bar fixtures are as near an imitation of a saloon as they can get up,—as near as I have ever seen, as far as the fixtures are concerned. I think they are old saloon fixtures."

Why have the furniture and fixtures been made to resemble those of a place where intoxicating liquors are sold,

if not for advertising purposes? There was no error. The fifth instruction correctly states the law.

VI. Appellant was given the extreme penalty,—a fine of $1,000. The offense does not appear to be other than the first of which he has been convicted. He seems to have been a person of some business capacity and influence, and should have known better than to pursue the course he did. The penalty imposed, however, should be measured somewhat by the manner of the offense and the character of the offender dealt with; and, so doing, we are inclined to regard the fine as somewhat more than was demanded, and therefore modify the judgment by reducing the same to $600. As so modified, the judgment is—*Affirmed*.

8. INTOXICATING LIQUORS: offenses: judgment: modification.

PRESTON, C. J., EVANS and SALINGER, JJ., concur.