STATE OF IOWA, Appellee, v. HAROLD M. COOPER, Appellant.

No. 43004.

MARCH 17, 1936.

Donnelly, Lynch, Anderson & Lynch, and Boardman & Cartwright, for appellant.

Edward L. O'Connor, Attorney General, for appellee.

RICHARDS, J.—Defendant was indicted by the grand jury of Linn county, charged with violation of section 85 of the Iowa Liquor Control Act (Code 1935, section 1921-f92), alleged to have been committed as follows:

"The said Harold M. Cooper on or about the 8th of December, A. D. 1934, in the county aforesaid, being then and there a member of the Iowa Liquor Control Commission, did knowingly and willingly permit a violation of the provisions of section 3 of the Iowa Liquor Control Act by one J. Leroy Farmer, in that he did knowingly and willingly permit the said J. Leroy Farmer to possess, unlawfully, vinous, fermented, spirituous or alcoholic liquors, except beer." The "Iowa Liquor Control Act", referred to in the indictment, is the statutory designation of chapter 24 of the Acts of the 45th Extra General Assembly. This act now appears as chapter 93-F1, title VI, of the 1935 Code. In this opinion we will designate the sections as numbered in the original act, chapter 24 above mentioned. Section 84 of said chapter appears in 1935 Code as section 1921-f91, as follows:

"1921-f91. Penalties generally. Unless other penalties are herein provided, any person who violates any of the provisions of this chapter, or who makes a false statement concerning any material fact in submitting an application for a permit or license, shall be punished by a fine of not less than three hundred dollars nor more than one thousand dollars, or by imprisonment in the county jail for not less than three months nor more than one year, or by both such fine and imprisonment."

Section 85 of said chapter appears in 1935 Code as section 1921-f92, as follows:

"1921-f92. Violations by members and employees—acceptance of bribe. Any member, secretary, officer or employee of the commission who shall knowingly or wilfully violate any of the provisions of this chapter, or knowingly and willingly aid, assist or permit any such violation, shall be guilty of a misdemeanor and be punishable by a fine of not to exceed one thousand dollars, nor less than three hundred dollars, or by imprisonment in the county jail for not less than three months, nor more than one year, or by both such fine and imprisonment. Section 13293 is

hereby made applicable to the members and employees of the liquor control commission.''

Defendant challenged the sufficiency of the indictment. The specific matter upon which the attack is grounded is the fact that J. Leroy Farmer, referred to in the indictment, was not a member, secretary, officer, or employee of the Iowa liquor control commission. Defendant claims that in section 85, violation of which is charged in the indictment, the words ''such violation'' must refer to a violation by members, secretaries, officers, or employees of the commission. Upon such construction of the section appellant bases his proposition that the indictment did not charge a violation of section 85 because concededly Farmer was not a member, secretary, officer, or employee of the commission, nor had any connection therewith.

In support of his contention that the words ''such violation'' in section 85 refer to a violation by members, secretaries, officers, or employees of the commission, appellant sets out the following reasons:

''First: The words 'such violation' must refer to what precedes and there is no other violation mentioned to which they can refer.

''Second: Such construction is the reasonable construction and follows from the words 'knowingly and willingly permit' such violation—it creates a rule governing the internal affairs of the Commission where there could well be a rule that one in authority should not permit a violation of the law.

''Third: If the statute had intended to make it a crime for a member of the Commission to permit a violation by any and every one in the State of Iowa outside the Commission, then it could and should plainly so state.

''Fourth: The statute—the Liquor Control Act—at no place, placed the duty of law enforcement upon the Commission. It is not one of the Commissioner's duties or powers, this duty being placed by the Act, upon the County Attorney.

''Fifth: The construction contended for is the reasonable construction and the plain construction, but if there was even any doubt that doubt should be resolved in favor of the defendant.''

On the other hand, appellee contends that these words ''such

violation'' refer back to the words ''any of the provisions of this Act'' for the following reasons:

''First: The language of section 85 indicates that it was intended to prohibit the permission, by the Commission or any of its members, of violations of the Liquor Control Act by any person.

''Second: That the entire liquor control statute, taken as a whole, indicates that 'such violation,' as used in section 85, means a violation by any person.''

Stated in another way, appellant would refer the words ''such violation'' back to the entire preceding context of section 85, while appellee would refer back ''such violation'' to only the words ''any of the provisions of this act.''

In Webster's New International Dictionary Second Edit. the shades of meaning of the adjective ''such'' are distinguished under seven classifications, of which must be rejected the third, sixth, and seventh because obviously inapt. In the remaining classifications there appear the following meanings: '' (1) Of this or that kind, character or measure; of the sort or degree previously indicated or contextually implied; (2) Having the quality already or just specified; (4) Of the same class, type or sort; in the same category; (5) before mentioned; previously characterized or specified.'' As illustrating above meaning (1), Webster quotes: ''Let no such man be trusted.'' In this use of the words ''*such* man'' Shakespeare pointed out no man susceptible of certain identification, because the ''such man'' was any man, anywhere, who, like the antecedent personality, has not music in himself. Shakespeare's antecedent is some indefinite and hypothetical individual, and the word ''such'' as used expresses in a large measure the thought of mere similarity. But of the problem before us one element is the fact that the association of our word ''such'' is not with the vagaries of layman literature, but with a penal statute creating a public offense, where certainty and pointedness of definition of the offense created is a presupposed requisite. Quite apparently this compels finding, if it exists, a definite and certain antecedent for the words ''such violation'' and forcibly suggests ascribing to the word ''such'' the thought, not of mere similarity, but of the requisite definiteness of identification of the offense created, as is

found in the above meaning numbered (5), that is, the meaning "before mentioned, previously characterized or specified." Substituting such meaning for the word itself, the material portion of section 85 would then read, "or knowingly and willingly aid, assist or permit any before mentioned, previously characterized or specified violation," etc. We are of the opinion that the previously characterized or specified violation was a violation by a member, secretary, officer, or employee of the commission. This conclusion comes from consideration of the following matters:

The Iowa Liquor Control Act, too voluminous to be herein set out, by its own terms is designated as an exercise of the police power. It declares that the traffic in intoxicating liquors is so affected with a public interest that it should be regulated to the extent of prohibiting all traffic in them, except as provided for in the act. The act then proceeds to establish the Iowa Liquor Control Commission, and vests therein authority to buy, import, and sell liquors, and prohibits, with certain exceptions, all other liquor traffic. In the act is found unusually comprehensive legislation prescribing a detailed manner of functioning by the commission and by its personnel. In so doing the act creates many duties, the observance of which is imposed by the act on the members, secretaries, officers, and employees of the commission. These are the administrative duties laid down for the conducting of the liquor business, including certain matters incidental thereto, such as inhibitions on political activities and on the having of personal interest in manufacturing or dealing in liquors. Without encumbering the opinion with any attempted enumeration of these duties, their legislative importance and their intended comprehensiveness may be indicated by saying that the liquor business placed in the hands of this commission is statewide, and its magnitude is suggested in the fact that the act appropriated from the funds of the state treasury the sum of one-half million dollars for use by the commission in the purchase of liquors and payment of such other expenses as might be necessary to establish and operate state liquor stores and special distributors, and to perform such other duties as are imposed on the commission by the act. Sufficient has been said to make it clear that, on account of these many duties of heavy administrative responsibility, a marked distinction arises between the members, secretaries, officers, and employees of the commission on the one hand, and the general public on the other, in their relations to the act.

The distinction is that there are many respects of large importance in which the members and personnel of the commission may violate the terms of the act, but, speaking generally, the nature of these violations is such that they are incapable of being committed by persons constituting the general public. This distinction is so evident, and the accomplishment of the purposes of safeguarding important public interests as declared in the act is so bound up in and dependent upon the faithful and efficient observance of these administrative duties that it is reasonable to say that the legislature purposely and intentionally segregated violations of the act by the personnel of the commission, and in enacting section 85 had but one apparent purpose or thought, that is, to make provision to insure proper performance of these essential administrative duties by the members, secretaries, officers, and employees of the commission, in their respective official capacities. This conclusion finds substantial confirmation in an appraising of the difference in the nature of the offenses created by section 85, compared with all other offenses that can be found in the act. The point is that the legislature inserted intent as an essential element of all offenses punishable under section 85, quite evidently because there could be innocent violations by the personnel of the commission of duties, administrative in their nature, arising through errors made without guile. But this element of intent was not made part of any of the other offenses the legislature at the same time created in other provisions of the act. This leaves these other misdemeanor offenses punishable, regardless of intent. State v. Striggles, 202 Iowa 1318, 210 N. W. 137, 49 A. L. R. 1270. It is also significant that these other offenses, such as illegal possession, bootlegging, nuisance, using liquor in public places, are further distinguishable from violations of section 85, in that such offenses are peculiarly such as may be committed by the general public. So we have not only fundamental reasons and necessities that would lead the legislature to enact section 85 for the purpose of insuring within the commission proper administration of the liquor business, but, as might be expected, we find that the legislature did in fact in the ways described quite definitely indicate their intent that avoidance of violations within the commission, peculiar to the personnel of the commission, was the essential purpose and intent that was in the mind of the legislature in enacting section 85.

That in enacting section 85 the legislature expressed no ap-

parent intent to accomplish any purpose other than to insure proper performance, within the commission, of the administrative duties of the personnel of the commission, is quite strongly suggested by the association of the words ''aid, assist or permit'' as used in section 85. The association of these words is with the first portion of the section which makes it an offense for any member, secretary, etc., to knowingly·or willfully violate any of the provisions of the chapter. This first portion is followed immediately by the phrase in which the words ''aid, assist or permit'' are used, introduced by the disjunctive ''or'', indicating, as it seems to us, an alternative form of the offense first described, this alternative form of offense creating a culpability if such violation described in the first phrase be accomplished by a member, secretary, officer, or employee, as an accessory, as it were, by knowingly and willingly aiding, assisting, or permitting such violation by some one of the personnel of the commission. A convincing reason that this was in fact the specific and only contemplated evil the legislature had in mind in enacting section 85 is that there was urgent necessity for the creation of just such a rule governing the internal affairs of the commission, forbidding those in authority to knowingly permit violations by inferior officers or employees, and prohibiting all connected with the commission from knowingly aiding or assisting in any violation of duty by co-workers in the commission. The evil sought to be avoided was quite evidently that expressed in street language as a ''passing of the buck,'' within the commission. In view of the importance the legislature undoubtedly attached to the proper performance within the commission of these administrative duties in conducting a public business of huge monetary proportions, and in view of declared great public importance, the creating of such a rule governing the internal affairs of the commission would appear to be the overshadowing purpose of the legislature in enacting section 85, and in itself a wholly sufficient reason for the section. So sufficient is such purpose that it seems illogical to search further, especially for purposes of slight moment, comparatively speaking. However, appellee argues that an evil, additional to the very evident one above mentioned, was contemplated by the legislature when it wrote section 85; that is, the evil that would ensue if some one of the personnel of the commission knowingly and willingly permitted such offenses as bootlegging, nuisance, drinking in public places, etc., by the

populace of the state of Iowa. As a matter of sensible contemplation, it seems highly speculative that the legislature would have even anticipated, as a likely evil to be guarded against, that the personnel of the commission the legislature was so carefully creating would be knowingly and willingly permitting bootlegging and kindred offenses by the public. But, if the legislature had contemplated such evil as something to be guarded against, as appellee claims in argument, it is quite necessary to believe and assume that somewhere in the act the legislature would have taken definite precautions against the evil, and would have imposed in express terms on the personnel of the commission some duty to be observed, or some authority to be exercised, in restraining or prosecuting the offending public. This the legislature did not do. Nothing of that nature is to be found in the act. It is hardly reasonable that the legislature contemplated such evil so casually and without providing in the act any specific obligations or duties in avoidance thereof. But in another manner the legislature seems to have legislated fully on the subject of controlling violations by the public. For it is noted that section 87 of the act (Code 1935, section 1921-f94) constitutes the county attorney of every county together with the sheriffs, deputies, city police, and town marshals of the entire state as the enforcement provision of the act. In this section, the legislature placed its dependence upon the county attorneys and this body of peace officers, that observance of the act by the general public would be obtained, and made any neglect, malfeasance, or misfeasance sufficient ground for removal. Such provision was an efficient method of attaining that object on account of the contact with the public and the opportunity to be advised of violations, incidental to the other duties of such county attorneys and peace officers. The legislature having thus delegated to a defined body of public officials the enforcement of observance by the general public, and significantly omitting the personnel of the commission from such group of enforcement officials, it is a fair conclusion, from these positive matters appearing in the act, that the legislature had no contemplation that the personnel of the commission would have any more to do with violations by the public than would a private citizen. If such be the case, appellee's above-mentioned assumption of legislative intent finds negation in the act itself. It might further be said that we do not find in appellee's argument any discussion relative to another

weakness therein; reference being made to the fact that the meaning appellee attaches to section 85 would have been quite clearly expressed if the legislature had not used the word "such". But the word does appear. And it is not in accord with the rules of construction of this criminal statute to extend its intendment by assuming the word "such" was purposeless. What we think was the meaning of the word has already been stated.

■■■ Finally, there is one consideration which forecloses any conclusion other than that hereinbefore expressed. It is a criminal statute, not a civil statute nor a contract, that we are construing. In State v. Wignall, 150 Iowa 650, 656, 128 N. W. 935, 937, 34 L. R. A. (N. S.) 507, we said:

"Criminal statutes are to be strictly construed, and in case of doubt these doubts are to be solved in favor of the accused."

In State v. Campbell, 217 Iowa 848, 853, 251 N. W. 717, 719, 92 A. L. R. 1176, it is said:

"It is a settled rule in this state that criminal statutes are to be strictly construed, and not extended to include an offense not clearly within the fair scope of the language employed."

In United States v. Gooding, 12 Wheat. 460, 477, 6 L. Ed. 693, Mr. Justice Story said:

"This is a penal act, and is to be construed strictly, that is, with no intendment or extension beyond the import of the words used."

Not only because the construction of this statute contended for by appellant appears more within the thought and intention of the legislature, for the reasons we have tried to make clear, but because the rule of construction above mentioned has application to the situation before us, we find no course open than to resolve such doubts, as there may be as to the legislative intent, in favor of the accused. We think we could not hold otherwise without extending section 85 to include a possible offense not clearly within the fair scope of the language employed. To hold otherwise than we do would be to create an offense by an intendment or inference violative of the rule of strict construction of criminal statutes. We hold the indictment did not charge the defendant with any offense, in that Farmer had no connection

with the liquor commission. It follows that the case must be and is reversed and remanded to the district court for proceedings in accordance herewith.—Reversed and remanded.

DONEGAN, C. J., and ALBERT, MITCHELL, ANDERSON, PARSONS, and STIGER, JJ., concur.

HAMILTON and KINTZINGER, JJ., dissent.