STATE OF IOWA, appellee, v. FRED SCHULTZ, appellant.

No. 47918.

(Reported in 50 N.W.2d 9)

November 13, 1951.

Hall & Ewalt, of Indianola, for appellant.

Robert L. Larson, Attorney General, and M. C. Herrick, County Attorney, for appellee.

Thompson, J.—The indictment herein charged the defendant with violation of section 124.20 of the Code of 1950. After the jury had been selected and sworn, the county attorney was permitted, over defendant's objection, to amend by adding the words "either personally or by agent or employee." The original indictment charged the defendant with the crime of "offering or making beer available to a minor," in that the defendant "did on October 20, 1950, offer or make beer available to Marion Hardesty, a minor of 16 years of age." The words of the amendment were inserted immediately after the date, so that this portion of the

charge, as amended, read: "* * * did on October 20, 1950, 'either personally or by agent or employee' offer or make beer available * * *." Defendant was found guilty by jury verdict, and judgment was duly entered thereon.

There is little dispute in the facts. Defendant and his wife had a Class B beer permit, by virtue of which they operated a tavern in the town of Martensdale, in Warren County. Defendant was employed in Des Moines, so that the operation of the tavern fell almost altogether to his wife, with the assistance of one Rhoads. On the evening of October 20, 1950, when the commission of the alleged crime is charged, the evidence is without dispute that defendant was in Des Moines,. and did not return until some hours after the claimed sale of the beer to the minor. Nor is there any evidence whatever that he had any knowledge of the transaction, or that it was made under his direction or with his consent.

The record is likewise devoid of any showing as to who made the sale. Marion Hardesty, sixteen years of age on October 20, 1950, had started from Winterset for Des Moines, with four other boys, all minors, about 5:30 to 6:30 p.m. on the date named. They were traveling in an automobile owned by one of the boys. On the way they took up a collection for the purpose of purchasing beer, and stopped before the defendant's tavern in Martensdale. Here Hardesty, armed with the proceeds of the collection, entered the place and bought eighteen bottles of beer. He did not know from whom he made the purchase. He testified: "I did not look very closely at the man who sold me this beer. If I saw him again I would not know him." The other boys remained in the car, and did not see the seller.

The material part of section 124.20 is herewith set out:

"It shall be unlawful for any person to sell, give or make available to any minor or to permit any minor to purchase or consume any beer on the premises of a class 'B' or class 'C' permit holder, or for any minor to buy or attempt to buy or to secure or attempt to secure beer from any person, and it shall further be unlawful for any person to offer beer, with or without consideration, to any minor, except within a private home and with the knowledge and consent of the parent or guardian of

said minor. A violation of the provisions of this paragraph by any holder of a class 'B' or class 'C' permit or any of his agents or employees in connection with the operation of a beer business under said class 'B' or class 'C' permit shall be a mandatory ground for revocation of said permit, in addition to other mandatory grounds provided in this chapter."

Chapter 124 of the Code, of which the above-quoted section is a part, also contains a general penalty clause, providing punishments for "any person who violates any of the provisions of this chapter." Section 124.37.

I. The major contention of defendant, and the only one which we find it necessary to consider, is that the burden was upon the State to show, not only that a sale was made to the minor through his agent or employee, but that such sale was with the defendant's knowledge or consent. He raised this question by motion for directed verdict, both at the close of the State's evidence and at the close of all the evidence; and by exceptions to the instructions in which the court told the jury that it might find defendant guilty if the sale was made either by him personally or by his agent or employee.

Generally, a criminal intent is essential before it can be said that an offense has been committed. Within certain limits, however, the legislature may forbid the doing or require the doing of an act and make its commission or omission criminal without regard to the intent or knowledge of the doer. 22 C. J. S., Criminal Law, sections 29, 30, pages 84, 85, 86.

Whether intent is a necessary element of a statutory crime is a matter of statutory construction. We said, in State v. Dunn, 202 Iowa 1188, 1189, 211 N.W. 850, 851: "Whether a criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined as a matter of construction from the language of the act, in connection with its manifest purpose and design."

We have held that such construction leads to the conclusion, in some cases, that intent or knowledge is not required, and that a defendant may be convicted of an offense which he had no thought of committing, and when he had no knowledge that he was violating the law. State v. Dobry, 217 Iowa 858, 250 N.W.

1332

702; State v. Dunn, supra. Closely related to these two is State v. Striggles, 202 Iowa 1318, 210 N.W. 137, 49 A. L. R. 1270, in which it was determined that the reliance of the defendant upon a lower court holding that a certain machine was not a gambling device did not protect him from conviction for keeping a gambling house, when the inferior court's holding was later held to be erroneous.

But we think it should be, and is, the law that the legislative intent to eliminate guilty knowledge should be clearly apparent. It is true that criminal intent is said not to be involved in an accusation of selling intoxicating liquors. State v. Fountain, 183 Iowa 1159, 1163, 168 N.W. 285; 48 C. J. S., Intoxicating Liquors, section 214, page 339. But we must not confuse criminal intent with knowledge. 48 C. J. S., supra, says:

■ "Usually as the statutory offense is committed by the doing of the prohibited act, a guilty or criminal intent is not a necessary part of the offense * * *." But immediately following is this: "*The only intent necessary is an intent to do the prohibited act.*" (Italics supplied.) That is to say, while an intent to break the law is not essential, a knowledge of the act itself is required, at least in the absence of an expressed legislative intent otherwise.

In State v. Striggles, supra, the defendant knew of the presence of the prohibited gambling devices; but he did not know that they were prohibited. He had knowledge of the doing of the act, and so his intent to violate the law was held not essential. So in State v. Fountain, supra; intent was held not material, but there was a clear implication that defendant had knowledge that intoxicating liquors were actually sold on his premises.

In State v. Probasco, 62 Iowa 400, 17 N.W. 607, the statute made it unlawful for the keeper of a billiard saloon, *or his employees,* to permit minors to remain in the place. In Church v. Higham, 44 Iowa 482, and Dudley v. Sautbine, 49 Iowa 650, 31 Am. Rep. 165, the applicable statute, section 1539 of the Code of 1873, forbid any person, *by agent or otherwise,* to sell intoxicating liquors to anyone who was in the habit of becoming intoxicated. Convictions in these cases were upheld; but in each of them the legislative intent to make the owner or employer liable for the acts of his agents was clearly expressed.

It is further well-settled law that penal statutes are to be strictly construed; and in case of doubt, such doubt is to be resolved in favor of the accused. State v. Cooper, 221 Iowa 658, 666, 265 N.W. 915; State v. Andrews, 167 Iowa 273, 149 N.W. 245; State v. Wignall, 150 Iowa 650, 128 N.W. 935, 34 L. R. A., N. S., 507; In re Estate of Kuhn, 125 Iowa 449, 101 N.W. 151, 2 Ann. Cas. 657; State v. Lovell, 23 Iowa 304.

But in the end, each case of this kind must turn upon the proper construction to be placed upon the governing statute. If the judgment of the lower court here is to stand affirmed, it must be because the legislative purpose to do away with the requirement of intent or guilty knowledge, and to permit the accused to be punished for an offense committed by an agent or employee while he was absent from the premises, an offense which he had not sanctioned and of which he had no forewarning, is clear from the provisions of section 124.20. The statute fails to meet such a test.

It will be noted that the first sentence of the quoted paragraph of the statute makes it unlawful for "any person" to sell, give or make available any beer to a minor. The second sentence makes a violation of this provision by a permit holder "or any of his agents or employees" ground for revocation of the permit. The only criminal punishment, for a violation of the provisions of the first sentence, must be found in the general penalty section of chapter 124, section 124.37. But in defining the crime and its punishment the legislature did not see fit to include the words "or any of his agents or employees", as it did in the latter part of the statute setting up grounds for revocation of license. We must conclude that it did not mean to make the permit holder guilty of a criminal offense, if committed by an agent or employee, unless he had intent or guilty knowledge. If it had such purpose, it could readily have said so in the same manner that it did in providing for revocation of the permit. Its failure so to do is most persuasive.

The same situation was before this court in State v. Bradley, 231 Iowa 1112, 1116, 3 N.W.2d 133, 135. A statute prohibited keeping or using any liquor for beverage purposes of an alcoholic content greater than four per cent upon the premises of any Class B permittee. A general penalty section of the same chapter

provided punishment for "any person" violating any of the provisions thereof. The trial court instructed the jury that if they found such liquor was used or kept upon the premises "either with or without the knowledge of the defendant," upon this feature of the case they would be warranted in finding him guilty. We said:

"Section 1921.132 provides that any person who violates the provisions of section 1921.126 shall be guilty of a crime. * * * It was not sufficient for the State to prove that liquor was kept in the place of business of defendant; it was incumbent on the State to prove that the liquor was kept on the premises *with the knowledge of defendant.*" (Italics supplied.)

The Bradley case is directly in point, and is a controlling precedent. There, the question was as to the knowledge of the defendant that intoxicating liquor was kept on his premises; here, it is as to the accused's knowledge of sale of beer to a minor. The principle involved is identical, except that we think the statute in the case at bar is stronger in its showing that the legislature did not intend to do away with the requirement of knowledge.

It was incumbent upon the State to prove that the sale to the minor was made with the knowledge, or by the direction, sanction or approval of the defendant. The record is barren of any such showing. We are not disposed to extend further the doctrine of guilt without intent or knowledge. Defendant's motion for directed verdict should have been sustained.—Reversed.

BLISS, WENNERSTRUM, SMITH, MANTZ, and HAYS, JJ., concur.

OLIVER, C. J., and GARFIELD and MULRONEY, JJ., dissent.

OLIVER, C. J. (dissenting)—I am unable to agree the record is "devoid of any showing as to who made the sale" of beer to the minor. The record shows John Rhoads was employed by defendant as bartender in the tavern and was in charge of it that day. It may be fairly inferred Rhoads made the sale. There was no evidence to the contrary. The sale was made in the regular

course of the business Rhoads was employed by defendant to transact. Defendant as a witness did not testify the sale was without his consent or contrary to his instructions.

The majority opinion states a criminal intent is essential before it can be said an offense has been committed and whether intent is a necessary element of a statutory crime is a matter of statutory construction. That statement is indefinite and inadequate and does not accord with the general rule which is also the rule in this State. The general rule is intent is not an essential element in statutory crimes of this nature unless the statute so provides. State v. Striggles, 202 Iowa 1318, 1320, 210 N.W. 137, 138, 49 A. L. R. 1270, 1272, states:

"It is settled law that, in prohibitive statutes covering misdemeanors, where no provision is made as to the intention, and the word 'knowingly' or other apt words are not employed, to indicate that knowledge is the essential element of the crime, intention is not an element of the crime. Especially is this so where the act is forbidden by statute in the aid of the police power of the state."

In the language of State v. Cooper, 221 Iowa 658, 663, 265 N.W. 915, 917:

"The point is that the legislature inserted intent as an essential element of all offenses punishable under section 85 * * *. But this element of intent was not made part of any of the other offenses the legislature at the same time created in other provisions of the act. This leaves these other misdemeanor offenses punishable, regardless of intent. * * * It is also significant that these other offenses, such as illegal possession, bootlegging, nuisance, using liquor in public places, are further distinguishable from violations of section 85, in that such offenses are peculiarly such as may be committed by the general public."

Hammond v. King, 137 Iowa 548, 552, 114 N.W. 1062, 1063, states: "* * * many police regulations, including those relating to the sale of intoxicating liquor, are so framed that the doing of the prohibited act is punishable as a crime, regardless of the intent with which it was done."

State v. Fountain, 183 Iowa 1159, 1163, 168 N.W. 285, 286, states:

"Moreover, the matter of intent is not involved in an accusation of selling intoxicating liquors. If the defendant or anyone else for him actually sold intoxicating liquors on the premises, he would be guilty, whether he intended so to do or not."

Code section 124.1 makes it unlawful to sell beer without a permit. Subsequent sections in the chapter regulate such permits and sales. The sale of beer is regarded as a business requiring substantial restriction and control and the act recognizes the necessity of strictly regulating it for the protection of the public welfare and morals. Soursos v. Mason City, 230 Iowa 157, 158, 296 N.W. 807; State v. Talerico, 227 Iowa 1315, 1321, 1323, 290 N.W. 660; Bernstein v. City of Marshalltown, 215 Iowa 1168, 248 N.W. 26, 86 A. L. R. 782.

The majority refers to the paragraph of Code section 124.20 here involved and points out that the first sentence makes it unlawful for "any person" to offer or make beer available to a minor upon the premises of a permit holder and that the second sentence makes a violation of this provision by a permit holder "or any of his agents or employees" ground for revocation of the permit. The majority reasons the failure to specifically list "agents or employees" in the first sentence indicates a legislative intent not to make the permit holder responsible for their acts.

This reasoning overlooks the language of the first sentence which makes it unlawful *for any person* to make beer available to a minor on the premises of a permit holder, or for a minor to secure or attempt to secure beer from *any person,* or *any person* to offer beer to a minor, except in a home, etc. However, the permit holder's license may not be revoked merely because *any person* makes beer available to a minor in a tavern. Only such act by the permit holder or his agents or employees affords ground for such revocation. The effect of the language in the second sentence, any holder of a permit "or any of his agents or employees" is not to extend, but rather to limit the class of persons whose conduct might constitute grounds for revocation of the permit. This limitation affords no sound basis for concluding the language of the first sentence should be construed

as exempting the permit holder from the responsibility for the conduct and acts of his employees in the regular course of their employment.

In State v. Probasco, 62 Iowa 400, 402, 17 N.W. 607, 608, the statute provided " 'it shall be unlawful for any person who keeps a billiard hall, beer saloon or nine or ten-pin alley, or the agent, clerk or servant of any such person, or any person having charge or control of any such hall, saloon, or alley, to permit any minor or minors to remain in such [place] * * * or to take part in * * * billiards.' "

It will be noted that statute is in much the same form as the first sentence of the paragraph of the statute here involved which makes it unlawful for *any person* to make beer available to a minor on the premises of a permit holder. The statute in the Probasco case did not in so many words make the keeper subject to prosecution for the conduct of his employees, it merely included employees in the class subject to prosecution themselves, but the court in affirming the conviction said at page 403:

"Hence, if proper watchfulness is not exercised by either; if the keeper fails to enforce watchfulness on the part of his employes, and thereby a minor is permitted to remain in the saloon, *both violate the statute.*

"It is obvious that, in the absence of watchfulness and proper effort to discharge the duty imposed by the statute, if a minor remain in the saloon without the knowledge of the keeper or employe, each is liable for the penalty provided by the statute." (Italics supplied.)

State v. Bradley, 231 Iowa 1112, 1116, 3 N.W.2d 133, 135, is cited by the majority. That case did not involve the act of an employee in the course of his employment for which defendant would be responsible. It turned upon an instruction defendant could be convicted if liquor was kept upon the premises with or without his knowledge. This instruction was held to be erroneous. The record there showed only that liquor was found on the premises. Had it showed defendant's bartender was dispensing such liquor over the bar in the course of his employment the facts would have been similar to those in the case at bar.

The majority warns "we must not confuse criminal intent with knowledge." This warning is not appropriate under the circumstances of this and like cases where the prohibited act is the act of an agent or employee for which the statute makes the defendant criminally responsible. In such cases the knowledge of the agent would be the knowledge of the defendant. The majority seems to have overlooked the difference in principle pointed out in Dudley v. Sautbine, 49 Iowa 650, 652, 31 Am. Rep. 165, between the criminal responsibility of the owner for illegal sales of liquor by a barkeeper without the owner's knowledge or consent, and for illegal sales by the owner's wife in his name: "In the former case the barkeeper was employed to sell liquor to persons not intoxicated, and he was employed to observe and determine who among those desiring to purchase were not intoxicated. In the case where the wife whose husband was not licensed sold liquor, she did not merely fail in the proper discharge of her duty, but she acted entirely outside of her duty, for she was not employed to sell liquor at all."

In 139 A. L. R. 306 is an annotation entitled, "Criminal responsibility of one authorized generally to sell intoxicating liquors for particular illegal sale thereof by employee or agent." At page 309 the author states *most of the statutes contain no express stipulation as to the criminal liability of an employer for unlawful sales by his employees or agents in the course of their employment,* and continues:

"Decisions (of which the following are illustrative) holding that an employer is criminally responsible for unlawful sales of intoxicating liquors by his employee within the scope of his employment are based largely upon the doctrine that in statutory crimes intent is not an ingredient of the offense unless provision in that regard is incorporated in the statute." (Citing authorities.)

The majority states the rule to be: "That is to say, while an intent to break the law is not essential, a knowledge of the act itself is required, at least in the absence of an expressed legislative intent otherwise." This statement overlooks the language of several decisions of this court already referred to herein, with reference to the criminal liability of the employer for acts

of his agents or employees. As a matter of fact the doctrine of criminal responsibility of the employer for illegal sales of liquor by employees in the course of their employment is so well recognized that in the annotation in 139 A. L. R. 306 et seq. are subdivision headings listing many decisions involving (a) Sales without knowledge or consent of, or in the absence of, employer. (b) Sales contrary to instructions. Neither these various courts nor the annotator "confuse criminal intent with knowledge." Perhaps it should be again stated that in the case at bar there was no evidence the sale to the minor was without defendant's consent or contrary to his instructions.

In State v. Brown, 73 Or. 325, 144 P. 444, the proprietor was held criminally responsible for the sale by his bartender of liquor to a minor, without the knowledge of the proprietor and contrary to his express orders. In Hershorn v. People, 108 Colo. 43, 54, 113 P.2d 680, 685, 139 A. L. R. 297, the manager of a night club contended he was not criminally liable for illegal sales to a minor during his absence, since there was no knowledge or intent on his part to commit the crime. The court rejected this contention, quoting from 30 Am. Jur. 414, 415, 416, Intoxicating Liquors, sections 301, 302 and 303, citing various decisions and stating the authorities were in conflict but its decision was in harmony with the majority rule. "To hold otherwise would largely nullify section 3(b) supra" which provides it shall be unlawful to sell spirituous liquors to anyone under the age of twenty-one or to an intoxicated person.

State v. Schull, 66 S. D. 102, 106, 107, 108, 279 N.W. 241, 243, 115 A. L. R. 1226, involved the sale of nonintoxicating beer to a person under eighteen by an employee during the licensee's absence and contrary to his instructions. The statute read: " 'It shall be unlawful for any licensee under the provisions of this act to sell or give any nonintoxicating beer or wine to any person under the age of 18 years.' " The decision states it was the duty of the licensee to prevent such sales:

"We can see no distinction between the statute imposing that duty upon the licensee and the statutes which imposed upon proprietors of saloons the duty to keep their saloons closed during certain hours and certain days. By analogy, we believe that the

reasoning used in our decisions holding the proprietor of a saloon responsible under the intoxicating liquor statutes is decisive of the facts before us. * * *

"The trial court, in the instant case, in effect ruled that it was no defense by the holder of a license that the prohibited acts were committed by an agent, servant, or employee, without authority or contrary to instructions, during the absence from the premises of the holder of the license. This ruling, we believe, was correct and is in line with the leading authorities."

I would affirm the judgment of conviction.

GARFIELD and MULRONEY, JJ., join in this dissent.