STATE OF IOWA, appellee, v. HAROLD DRUMMER, appellant.

## No. 50699.

(Reported in 117 N.W.2d 505)

OCTOBER 16, 1962.

. Robert H. Baker, of Humboldt, for appellant.

Evan Hultman, Attorney General, John H. Allen and John C. Cortesio, Assistant Attorneys General, and Harlyn A. Stoebe, Humboldt County Attorney, for appellee.

PETERSON, J.—On March 5, 1962, the County Attorney of Humboldt County filed a County Attorney's Information against Harold Drummer charging violation of the provisions of section 321.76, Code of Iowa.

The section is as follows: "Operating without consent. If any chauffeur or other person shall without the consent of the owner take, or cause to be taken, any automobile or motor vehicle, and operate or drive, or cause the same to be operated or driven, he shall be imprisoned in the penitentiary not to exceed one year, or be imprisoned in the county jail not to exceed six months, or be fined not to exceed five hundred dollars."

The case was tried in the District Court and the jury found defendant guilty. On March 30, 1962, the trial judge sentenced defendant to one year in the Men's Penitentiary at Fort Madison. On the same day defendant filed notice of appeal to the Supreme Court.

Appellant assigns only one error which merits our serious consideration. Such error pertains to trial court refusing to give instruction requested by defendant that "criminal intent" is an essential element of the offense created by the above cited section.

I. Defendant was a single man 29 years of age. John Lawrence Devine (commonly known as Jack) and his brother Frank Devine jointly operated a farm near Livermore. In August 1961 Frank Devine hired defendant to work for him and his brother on the farm. Neither operator lived on the farm, but ordinarily they were there every day attending to and supervising the work. Defendant, as a hired man, performed whatever labor was necessary in the operation of the farm. He worked under the orders and general supervision of both brothers.

When defendant started working for the Devine Bros. there was an old 1952 Chevrolet truck being used on the farm. Defendant used it for hauling corn and hay and all other necessary trucking.

The record divulges that he had worked during all of Tuesday, February 6, 1962. Frank Devine had not been working on the farm that day. Another farm worker by the name of Colin Kilts, whom defendant had known and told his employers about, had worked just for the one day to help on some special farm

work. Between 4:30 and five o'clock Jack Devine was leaving the farm and was taking Mr. Kilts to his home in town.

There is no specific explanation as to why Jack made the statement to defendant on that particular day, but he testified he told defendant he must not use the Chevrolet truck that evening for his private use. He also testified he was the owner of the truck. Mr. Kilts testified he heard Jack Devine make the statement to defendant. Defendant denies the subject of the private use of the truck was under discussion between him and Jack, and denies the statement was made.

As part of his evidence defendant testified as follows: "He [Jack] did not tell me not to drive the pickup; I say that both he and Mr. Kilts are mistaken. * * * Most of the time the pickup was down at the Livermore farm because Frank had driven it down to work. There were a few times it was there for about a month. Occasionally it was there at night. Frank worked down there and most of the time he drove the pickup back and forth from Britt to Livermore. * * * I had not noticed a registration certificate on the pickup. * * * I thought Frank owned the truck. The 1962 license plates were put on the day before February 6. * * * Frank and Jack Devine drove the pickup without a registration certificate on it. * * * Frank would drive the pickup when Jack was not there. He drove it off the place to Livermore and LuVerne. * * * I got the idea that Frank owned the truck when I hired out to him. He brought me into home at Livermore; the folks were living there. The truck wasn't working right and he asked me if I would get out and fix the spark plugs on it. He said 'on my truck'. From that I assumed it was Frank's truck * * *."

Defendant also testified he had used the truck for his personal use, with Frank present, on three different occasions. He said: "The first time was about the middle of December; that time I went to LuVerne to get my laundry done at the laundromat there. Frank Devine knew about this incident; he was there on the place and saw me drive off with the truck. He didn't say anything to me when he saw me drive off or before I drove off. * * * Frank was there at the farm when I arrived. He saw me arrive, but said nothing to me after I got out of the pickup.

The next occasion when I used the truck during evening hours was about three weeks later; that time I went to Algona. * * * I picked up clean laundry and after visiting with my folks I went back to the farm again. * * * I told Frank Devine about the trip the next day. After I told Frank he said that if I needed 'it in an emergency case like that, I could use it, but not to make a habit of it.' On the Saturday night before February 6 I drove it to LuVerne. Frank went with me. He went to the pool hall in LuVerne. A buddy of mine was going to come down from Algona and pick me up at the farm. I asked Frank if he would take me back to the farm and he said, 'no, you take the pickup and go home with it and leave it on the farm, and I will find a way home.' I drove the pickup from LuVerne to the farm at Livermore. I got dressed and my folks picked me up there."

On Tuesday evening, February 6, when defendant was going to take his laundry to town he drove the pickup partly on a blacktop road. The highway was very snowy, icy and slippery, and in some way, which he was not able to fully explain, the truck ran off the road, upset, and defendant was thrown out and seriously injured. Someone found him and took him to a hospital. He testified he had no recollection of what happened after the truck ran off the road until he awakened in the hospital. The ten-year-old truck was wrecked and was taken to a junkyard.

II. The instructions given by the trial court were the usual and ordinary instructions given in a criminal case. The court properly instructed that defendant was presumed not guilty; that burden of proof was upon the State of Iowa to prove that he was guilty, and that he must be proven guilty beyond a reasonable doubt. The trial court cautioned the jury that the information itself was no proof of guilt and that the word "consent" in the statute means "voluntarily yielding the will to the proposition of another; acquiescence or compliance therewith"; that the crime involved two elements: That the defendant took the vehicle and operated it, and that he did so without the owner's consent.

III. To place the one question in conflict in this case in sharp focus, suffice to say that appellant contends the trial court

should have instructed it was necessary for the State to prove beyond reasonable doubt that defendant had criminal intent. Appellee claims proof of such intent or knowledge is not necessary under section 321.76 of the Code.

There is a line of cases, cited by appellee, which hold that certain sections of the Code involving a crime do not need proof as to intent or knowledge. Appellee cites for example State v. Dahnke, 244 Iowa 599, 57 N.W.2d 553; State v. Dobry, 217 Iowa 858, 250 N.W. 702; State v. Dunn, 202 Iowa 1188, 211 N.W. 850. The cases contain some principles of value in the case at bar.

▉ The following theory is fundamental as it appears on pages 861, 862 of 217 Iowa in State v. Dobry, supra: "In finding what shall constitute a crime, the legislature has unlimited power. In other words they can make it include certain elements or omit certain elements therefrom as in their judgment seems best. * * * [State v. Dunn is cited and quoted from]: 'It is quite universally recognized at this day that the legislature may forbid the doing of an act and make its commission a crime without regard to the intent or knowledge of the doer.' "

▉ In construing section 321.76, the crux of the matter appears in State v. Dunn: "Whether a criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined as a matter of construction from the language of the act, in connection with its manifest purpose and design."

Some cases, above cited, and appellee's argument in the case at bar, try to make the distinction on the basis of whether or not a statutory section is malum prohibitum or malum in se. The first Latin quotation denotes that the statutory prohibition is not essentially or fundamentally evil. Malum in se denotes the prohibited action is evil in itself.

We do not hold that a construction of section 321.76 clearly involves malum prohibitum. There is some evil involved in taking the car of another person without that person's consent even though there may be no intent of larceny.

We have rendered two comparatively recent decisions which settle the question as to the necessity for instruction to the jury as to criminal intent or knowledge in the case at bar. State v.

Bradley, 231 Iowa 1112, 1116, 3 N.W.2d 133, 135; State v. Schultz, 242 Iowa 1328, 50 N.W.2d 9.

State v. Schultz, supra, involves a violation of section 124.20, Code of 1950. Defendant was the owner of a tavern in Martinsdale, with a permit for the sale of Class B beer. On October 20. 1950, a 16-year-old minor purchased 18 bottles of beer at the tavern. The evidence is undisputed defendant was in Des Moines and did not return until several hours after the purchase. The operation of the tavern fell to his wife with the assistance of a man by the name of Rhoads. The evidence is not clear as to who sold the beer to the boy. He stated he thought it was a man but he could not identify him. At any rate, the evidence is clear it was not defendant.

In the District Court the jury found defendant guilty and he was sentenced in accordance with the provisions of section 124.37 of the Code.

The question of criminal intent was considered at length in the Schultz decision. The case was reversed by majority action of this court on the basis of no criminal intent being disclosed by the evidence.

A significant final paragraph in the decision (at page 1334 of 242 Iowa) is as follows: "It was incumbent upon the State to prove that the sale to the minor was made with the knowledge, or by the direction, sanction or approval of the defendant. The record is barren of any such showing. We are not disposed to extend further the doctrine of guilt without intent or knowledge. Defendant's motion for directed verdict should have been sustained.—Reversed."

We held the case of State v. Bradley, supra, was directly in point as to the Schultz case and was a controlling precedent. The decision in the Bradley case was unanimous. The court said in the case: "Section 1921.132 [1939 Code, predecessor of our present section 124.37] provides that any person who violates the provisions of section 1921.126 shall be guilty of a crime. * * * It was not sufficient for the State to prove that liquor was kept in the place of business of. defendant; it was incumbent on the State to prove that the liquor was kept on the premises *with the knowledge of defendant."* (Italics supplied.)

Quoting from the Schultz case: "There [Bradley case], the question was as to the knowledge of the defendant that intoxicating liquor was kept on his premises; here, it is as to the accused's knowledge of sale of beer to a minor. The principle involved is identical, except that we think the statute in the case at bar is stronger in its showing that the legislature did not intend to do away with the requirement of knowledge."

The two cited cases are precedents as to the case at bar. An examination and construction of section 124.37 discloses that neither the word "intent" nor "knowledge" is used in the parts of the section applicable to the two cited cases. Yet in both cases we held "intent" was necessary. Section 321.76, the basis of the case at bar, does not use the word "intent" or "knowledge". Under such precedents the jury should have been instructed accordingly.

IV. The Bradley case was reversed and remanded. In the Schultz case the facts were not in dispute. It was therefore sufficient, when the legal question was decided, that the case be reversed without another trial.

In the case at bar the facts are in dispute and must be submitted to a jury. While we are reversing the case, it is necessary that it be remanded for a new trial. The trial court should carefully instruct the jury as to the necessity for the State to prove beyond a reasonable doubt defendant had criminal intent and that if defendant reasonably believed he had permission from the owner to drive the truck on the evening of February 6, 1962, he would not be guilty of the offense charged.

The case is reversed and remanded for new trial.—Reversed and remanded.

All JUSTICES concur except THOMPSON, J., who dissents.

THOMPSON, J. (dissenting)—I respectfully dissent. State v. Schultz, upon which the majority relies, is not in point. The decision there turned upon the wording of the statute, in which the first sentence made it unlawful for any person to sell or give beer to a minor, but the second sentence included the words "or any of his agents or employees" in providing for loss of permit. We

held the two sentences taken together did not show the intent to make the owner criminally liable for acts of his employees without his knowledge or direction. No such situation appears here.

The court instructed on the meaning of consent. It is difficult for me to see how a car could be driven by a nonowner who did not know that he either did or did not have the owner's consent. As I understand it, the defendant's position was that he thought Frank was the owner, and he thought he had Frank's consent. This situation seems much like that in State v. Dahnke, where the bartender sold liquor to a minor who exhibited a draft card in fact belonging to another person and so induced the seller to believe he was an adult. We held this not a proper defense; that the statute made the sale of liquor to a minor criminal regardless of whether the seller did not know of the minority or had reasonable grounds to think he was an adult. I do not read the statute here differently.

Other states which have considered statutes comparable to ours have not found intent or knowledge necessary. Murphy v. Commonwealth, Ky., 279 S.W.2d 767, 769; Taulbee v. Commonwealth, 304 Ky. 551, 554, 201 S.W.2d 723, 724, 725; Commonwealth v. Coleman, 252 Mass. 241, 243, 147 N.E. 552, 553, where under a statute similar to ours the Massachusetts Supreme Court said: "Whoever uses a motor vehicle must actually be authorized to do so if he is to stand guiltless under this statute. Mere belief, however honest, in the authority of the person in control, is not enough."

I would affirm.