THE STATE v. VICTOR LONG, Appellant.—108 S. W. (2d) 388.

Division Two, August 26, 1937.

*Charles Rubins* and *Homer Hamilton, Jr.*, for appellant.

*Roy McKittrick,* Attorney General, *Wm. Orr Sawyers,* Assistant Attorney General, and *Arthur O'Keefe* for respondent.

LEEDY, P. J.—Appellant was convicted in the Circuit Court of Jackson County, and sentenced to a term of twenty-five years in the penitentiary upon a charge of rape (by carnally knowing a female child under the age of sixteen years, to-wit, the age of nine years). After an unsuccessful motion for new trial, he has duly appealed.

In his brief filed in this court, he makes only two points: First, that the evidence is so incredible and unsubstantial as to require a reversal; second, that the verdict is excessive, and was arrived at through passion and prejudice engendered by remarks of the court, and was not based on the evidence in the case. Treating the assignment "that the verdict was not supported by the evidence" (the fourth ground of the motion for new trial) as tantamount to a charge that there was no substantial evidence to support the verdict, we find the facts developed to be as follows:

Appellant, who was a married man, twenty-three years of age,

768

lived at Independence adjoining the home of the parents of the prosecuting witness. The families were on friendly terms, and the children of each played back and forth. The prosecuting witness, who was nine years of age, testified that on the evening in question, July 17, 1935, she and her younger sister were invited by appellant to go car riding. On the ride there were the following persons: appellant's two little boys, his grandmother and another man. Returning to appellant's home after an hour or so, the other passengers were discharged, and the prosecuting witness was invited to go for another ride with appellant alone, which she did. Appellant drove the car down a dark road about a mile and a half from home, and turned it around, ''and then he got out of the car and went around in front of the car and opened my door and then he said, 'Get in the back seat,' and so I did, and he got back there with me and he told me to, 'take my pants off,' and I said, 'Why?' and he said, 'Well, just take them off,' and so that would not do and he took me up in the front seat and then he turned around and took something out of his pants, and then he turned around facing me and I could feel his privates going into mine, and I was standing up on the running board then, and then the second time why, he told me to sit on the edge of the seat and so I did, and then he turned around and spit on something, and then he turned back around and faced me and then I could feel his privates going into mine again, and so after he did it that time he laid me on the seat and my head was about up to the steering wheel and then the last—that same time I could feel his privates going into mine, and so after that he told me, 'to put my pants on,' and I did, and we got in and started up the car and he saw two men coming up the road, so he told me to 'duck,' and he told me, 'not to get up until he said so,' and so I did, and then he told me to get up and then he said that we were going after his wife at prayer meeting, and so we went after her, and then we got her and a couple of other girls and we took those two girls home.'' The prosecutrix further testified she was admonished by appellant not to tell anybody or he would get in trouble, and that she did not make disclosure of the attack until about two weeks afterwards.

Dr. Charles F. Brabske testified that on July 27, 1935, ten days after the act is alleged to have occurred, he examined the prosecutrix and found that the hymen was torn in the upper right quadrant, which he believed to have been caused by the penetration of something and there was some bruising on both legs at about where the vulva joins the right and left thigh. He further testified that a vaginal examination was impossible because the vagina ''would not permit the entry of my finger.''

There was evidence of several witnesses to the effect that appellant had admitted the attack to the child's father. Appellant, testifying

in his own behalf corroborated the testimony of prosecutrix, except as to the fact of penetration. His testimony in that connection being as follows: "A. Well, we went on down this road and I turned the car around and I had asked her, 'if anybody had ever played with her,' and she said, 'No,' and I then asked her, 'If I could,' and she said, 'She didn't care.' . . .

"Q. (By Mr. RUBINS) All right; and then what happened? A. We went on out this road and I turned the car around and stopped. I did not turn the motor off, and I did not turn the lights off, and I got out and walked around to the side of the car and opened the door on the side she was sitting on, and she took down her pants and turned around and I took my penis out of my pants.

"Q. Now, I want to ask you about your taking down her pants. Did you ask her to take her pants down? A. No.

"Q. Did she? Did you of your own accord and by your own motion take her pants down or did she take them down? A. She took them down.

"Q. And you never asked her to take them down? A. No, sir.

"Q. Did she do that voluntarily? A. Yes.

"Q. All right. A. I took my penis out of my pants and turned around and she was sitting there on the seat, sitting up.

"Q. What seat was that, Mr. Long? A. Front seat of the car.

"Q. In the same seat she was sitting before? A. Yes.

"Q. All right. A. I turned around and at no time did I get any closer than six inches to,—that is her 'privates, so help me God, I did not.

"Q. Now Mr. Long, let me ask you this; did any part of your body touch her leg or her body or her private parts? A. No, sir.

"Q. What happened then after you did what you have related there? A. Well, I turned around that way and I was standing, you may say, almost between her legs, and I realized that I was doing wrong and I immediately put my penis in my pants and walked around the car and got in the car and started for home.

"Q. Now, Mr. Long, how long were you there stopped at that place while all this was going on, in a matter of time, to your best recollection? A. Not over two minutes at the most."

A medical witness, who examined the prosecutrix the day of the trial, testified he "found the hymen intact, with the exception of a slight variation from the normal, to the right and anterior portion." Whether that condition had been caused "by some penetration or some injury or whether she was born that way" the witness could not tell, but in his opinion "the slightest penetration" would have destroyed the hymen. One witness testified to appellant's good reputation.

The weight of the evidence was for the jury. From the fore-

going, it is clear that there was direct and positive evidence of appellant's guilt, and there is nothing in the contention that the verdict was not supported by the evidence in the case.

■ It is plain from a mere reading of the other grounds of the motion for new trial that, because of their indefinite and general nature, nothing is preserved for appellate review. They speak for themselves, and are as follows:

"1. That the verdict is contrary to the law and the evidence.

"2. That the Court excluded competent and legal testimony offered by the defense.

"3. That the Court misdirected the jury in material matters at law in refusing to give defendant's instructions 'B,' 'C' and 'D.'"

"5. That the jury failed to consider all the evidence presented in the trial.

"6. That the Court made remarks in the presence of the jury that were prejudicial to this defendant.

"7. That the Court made comments during the trial of this cause that invaded the province of the jury.

"8. That the information filed by the State was defective.

"9. That the remarks of the Court to defendant's counsel in the closing arguments were highly prejudicial to the jury.

"10. That the Court erred in refusing to discharge the jury after making remarks to defendant's counsel in the closing arguments."

■ We have examined the record proper, as is our duty under the statute. The information, while departing in minor respects from the forms approved by this court, is sufficient, and undoubtedly good after verdict. It charges defendant "did then and there unlawfully in and upon M—— J—— H——, a female child under the age of sixteen years, to-wit, of the age of nine, did make an assault, *forcibly* and her the said M—— J—— H——, then and there unlawfully and feloniously did carnally know and abuse." The introduction of the word "forcibly," which we have italicized, was purposeless, and may be disregarded as surplusage, force not being one of the elements of the offense. The "assault" should be alleged to have been made feloniously as well as unlawfully, just as in the next part of the sentence where the act itself is so characterized. Precedents for this type of charge are ample. [Kelley's Criminal Law and Practice (3 Ed.), p. 470; State v. Borchert, 312 Mo. 447; 279 S. W. 72; State v. Harris, 283 Mo. 99, 222 S. W. 420; State v. George, 221 Mo. 519, 120 S. W. 35; State v. Cason (Mo.), 252 S. W. 688; see, also, annotation to Sec. 3999, Mo. Stat. Ann., p. 2803.]

■ The verdict is in proper form, and responsive to the issues. It reads as follows: "We, the jury, find the defendant, Victor Long, guilty of rape as charged in the information and assess his punish-

ment at twenty-five years in the penitentiary of Missouri. (signed) James R. Abercrombie, Foreman.'' ''It designates the offense with which the appellant is charged and prescribes a punishment authorized by the statute. . . . More is not required.'' [State v. Gibson (Mo.), 300 S. W. 1106.]

The record seems to indicate appellant was accorded allocution, but we are of the opinion that the form thereof, as shown, was irregular and defective, in that it does not appear that when appellant appeared for judgment, he was informed by the court of the verdict of the jury, and asked whether he had any legal cause to show why judgment should not be pronounced against him. Such is the plain requirement of the statute. [Sec. 3713, R. S. 1929, Sec. 3713, Mo. Stat. Ann., p. 3236.] The record shows appellant was heard on his motion for a new trial, and immediately following the recital showing it was overruled, and an exception saved, it recites, ''Now said defendant having nothing further to say why sentence should not be pronounced and judgment rendered against him, according to the verdict herein had. It is therefore considered and adjudged by the Court that said defendant Victor Long do in accordance with the verdict of the jury herein had, undergo confinement in the penitentiary in the State of Missouri for and during the period of 25 years. . . .''

But by Section 3714, Revised Statutes 1929 (Sec. 3714, Mo. Stat. Ann., p. 3264), it is provided: ''If the defendant has been heard on a motion for a new trial, or in arrest of judgment, and in all cases of misdemeanor, the requirements of the next preceding section shall be deemed directory, and the omission to comply with it shall not invalidate the judgment or sentence of the court.''

Since it clearly appears that appellant was heard on his motion for new trial, the irregularity above pointed out is held not to invalidate the judgment and sentence. [State v. Turpin, 332 Mo. 1012, 61 S. W. (2d) 945; State v. Crow (Mo.), 73 S. W. (2d) 734.]

From what has been said, it follows that the judgment should be affirmed, and it is so ordered. All concur.