**STATE v. METJE.**

No. 28944.

St. Louis Court of Appeals.

Missouri.

June 15, 1954.

J. Grant Frye, Cape Girardeau, for appellant.

No brief filed by respondent.

HOLMAN, Special Judge.

This case originated in the Circuit Court of Cape Girardeau County upon the filing of an information charging that the defendant (appellant) did "engage in open, gross lewdness and lascivious behavior, grossly scandalous, by then and there having his private parts exposed in a public place in the presence of a female, to-wit: ———."

A jury being waived the cause was tried before the court and resulted in a finding that defendant was guilty. His punishment was fixed at imprisonment in the county jail for a period of 10 days. From the ensuing judgment and sentence the defendant has duly appealed thus causing the case to be transferred to this court for our review.

The evidence was brief. Only one witness, a police officer, testified at the trial. He related that at 2:35 a.m. on June 29, 1953, he was riding in a patrol car and received a message from the police station that someone had reported a lady screaming. The officer drove immediately to the vicinity indicated and entered the circular driveway on the south side of the Old Armour Cemetery in Cape Girardeau. After proceeding on the driveway for about 50 feet the car lights focused upon the defendant who was lying on top of a woman about 100 feet further up the driveway. It appears that the couple were lying on a blanket which had been placed upon a small terrace about five feet from the north edge of the roadway.

Upon the approach of the police car both the defendant and his companion jumped to their feet, the girl running over beyond his car while the defendant remained at the scene holding the blanket in front of his person. At the command of the officer the defendant dropped the blanket revealing that the only clothing he had on was an undershirt and pair of shoes. His private parts were exposed. It is obvious that he was dressed in this same manner at the time the automobile approached the scene. The driveway in question was used by the public but it is evident that it was used principally by people desiring to enter the cemetery. The defendant could not be seen from the city street that ran in front of the cemetery.

It is argued by the defendant that under the evidence he could not have been guilty of the offense charged. His contention is clearly stated in the opening sentence of his printed argument as follows, "Appellant's position is that he was having a private and intimate affair with ――― at an hour of absolute darkness, at a time and place where no one could have any occasion to be and at a place in the cemetery itself where he would not ordinarily be discovered; and that he did not commit an act in any 'open' manner nor in a 'public' place within the meaning of the statute."

■ The information is based upon the latter portion of Section 563.150 RSMo 1949, V.A.M.S. To constitute an offense under this provision the conduct complained of must have occurred in a public place or have been committed in the actual presence of another person. State v. Parker, 233 Mo.App. 1037, 128 S.W.2d 288. The allegation that the act was in the presence of the female companion of defendant would not be sufficient under the decisions. State v. Wolf, 211 Mo.App. 429, 244 S.W. 962. It is true that the act need not be actually offensive to those present. State v. Pedigo, 190 Mo.App. 293, 176 S.W. 556. However, to hold that the presence of the other participant in an act of intercourse is sufficient to make the occurrence a violation of the statute would result in constituting every act of fornication a crime regardless of the privacy that may surround the same. To so rule would be contrary to the previous decisions of our courts and could well be considered legislation by judicial construction. The State v. Phillips, 49 Mo.App. 325; State v. Parker, supra. We have concluded, however, that since the information alleges that the exposure was in a public place it is sufficient to charge an offense and that the allegation relating to the presence of the other person may be disregarded as surplusage. State v. Long, 341 Mo. 766, 108 S.W.2d 388.

■ The only remaining question for our decision is whether the place where defendant was found would be considered "public". In considering this question we must bear in mind that it is not the purpose of this statute to establish a code of morals or to correct every moral dereliction but to suppress open and notorious acts having a tendency to outrage public decency and corrupt the public morals. State v. Chandler, 132 Mo. 155, 33 S.W. 797.

Most all states have statutes similar to the one under consideration. Our research, however, fails to disclose any cases involving the public nature of indecent acts committed in a cemetery at night. We have found some cases which, by analogy, may be considered helpful.

■ It appears to be settled that it is the place where the act is committed and

not necessarily the actual presence of people nearby that determines whether it is an act of notorious public indecency. State v. Hedrick, Mo.App., 224 S.W.2d 546. It also seems obvious that a place may be public at some times and private at others. In Van Houten v. State, 46 N.J.L. 16, 50 Am.Rep. 397, it is said that, "the place is a public one if the exposure is such that it is likely to be seen by a number of casual observers". The indictment in Williams v. State, 64 Ind. 553, 31 Am.Rep. 135, alleged that the act was committed "on a public highway". This phrase was held not to be the equivalent of "in a public place", as required by the statute, and the indictment was held insufficient. A similar view is expressed by the court in Moffit v. State, 43 Tex. 346, wherein it is said that, "a public road in the night-time or in a remote and unfrequented part of the country may be, and often is, such a place as that such an exhibition might be there made without its being made 'in public' in the obvious meaning of the law".

In the instant case it is elementary that the burden was upon the state to prove, beyond a reasonable doubt, that the place where the defendant was found was, at that time, "public". The only evidence presented on this issue was that the spot selected by the defendant was in the cemetery near a driveway which was used by the public. We have concluded that this evidence is not sufficient to prove this essential element of the case. The testimony did not indicate that the public used this roadway at night and we are not permitted to assume such use.

It is generally known that the roadways in most cemeteries are used with some regularity during the daylight hours. However, it is a matter of common knowledge, of which we take judicial notice, that people do not ordinarily go into cemeteries at night. It is possible, of course, that there might have been some vehicular or pedestrian traffic on this roadway at about the time defendant was discovered. We think, however, that in order to carry the burden cast upon it, the state was required to present evidence that there was sufficient nighttime traffic upon this driveway so that the court could have found that there was a reasonable likelihood that the defendant would have been seen by persons traveling thereon.

A somewhat similar situation was considered by the Supreme Court in State v. McGehee, 308 Mo. 560, 274 S.W. 70. In that case a city marshal discovered the defendant and a girl apparently engaging in an immoral act near a public schoolhouse at night. The court held that the defendant had not violated the statute and pointed out that the place where he had been found, "was a secluded spot and not open and notorious, and, though a public place, not a place used by the public at that hour". We think this observation would apply with equal force to the place chosen by the defendant in the case at bar.

We do not wish to be understood as condoning the conduct of the defendant. In selecting a sacred city of the dead as the place for such immoral behavior he indicated a contemptuous disregard for the feelings of honor and respect with which most persons regard a burial ground. It is, perhaps, regrettable that we find it necessary to reach a conclusion that will result in his discharge. However, we must interpret the law as we find it and leave to the Legislature the exclusive province of changing the statute if such appears advisable.

The judgment and sentence herein should be reversed. It is so ordered.

RUDDY and BENNICK, JJ., concur.