STATE of Iowa, Appellee,

v.

Fredericka NELSON et al., Appellants.

No. 53789.

Supreme Court of Iowa.

June 23, 1970.

Jesse, Le Tourneau, & Johnston, Des Moines, for appellants.

Richard C. Turner, Atty. Gen., and William W. Garretson, Asst. Atty. Gen., and Michael Enich, County Atty., for appellee.

REES, Justice.

Eight defendant-appellants were charged by county attorney's information with the crime of indecent exposure in violation of section 725.1, Code, 1966. Their cases were consolidated for trial to a jury which resulted in verdicts of guilty as to each defendant, and each defendant was thereupon fined the maximum of $200. All defendants appeal. We affirm.

The defendants admittedly, at a public meeting in a lounge at one of the student residence halls of Grinnell College, and in the presence of a group of about 80 young men and women completely disrobed. The meeting was held in conjunction with or as a part of the college's program of sex education. At previous meetings presentations were made by a psychiatrist, a gynecologist and a clergyman. The meeting at which the incident occurred was at 8 P.M., February 5, 1969, and the featured speaker, Mr. Brice Draper, was present, representing Playboy Magazine. The magazine is a publication of wide, general circulation, and features short stories, articles, and "some pretty high quality fiction stories and photographs of nude women". In advance of the meeting a circular was distributed on the campus of the college characterizing Playboy Magazine as a "money changer in the temple of the body". A copy of the circular was introduced as an exhibit upon the trial of the case, and while one of the State's witnesses testified, according to the record before us, that the

"paper handed out to people before the meeting began stating the disrobing was going to occur" we find no reference in the exhibit of any advance notice that any of the persons attending the meeting planned in advance to disrobe. The eight defendants and two others who were not prosecuted disrobed completely, and remained unclothed as a part of the audience for about ten minutes and then put their clothing back on. During all of the time the defendants remained unclothed the discussion continued and there does not seem to be any indication in the record that the meeting was disrupted by the disrobing. During the disrobing, and while the defendants remained unclothed, they sang a song, "You Have Got to Walk That Lonesome Road", and it does not appear in the record that any of the defendants made any obscene gestures or engaged in any conduct that related to sexuality. Other than the act of disrobing there was no conduct which could have been interpreted as being obscene or lewd. No complaint was made to the civil authorities. The administration of the college was investigating the matter when an independent investigation was begun by the office of the Attorney General of Iowa, whereupon the college authorities terminated their efforts to investigate the incident.

There seems to be no substantial factual conflict in the record. All of the defendants testified that they were acting in protest against Playboy Magazine's use of pictures of nude females for commercial purposes, and deny they did anything by way of speech or gesture which might be considered obscene or indecent. They also testified they did not consider the mere act of disrobing indecent. All of the witnesses who testified stated there was no disruption of the meeting, and no act or speech other than the act of disrobing connoted anything indecent or obscene.

After the State had rested its case in chief, the defendants moved for a directed verdict of acquittal on the grounds (1) that there was insufficient evidence to show that each defendant exposed himself or any private part of his body in violation of the statute with which he or she was charged, and (2) there was a total absence of any evidence to show that the conduct complained of was open and gross lewdness and a designedly open and indecent or obscene exposure of the person of any of the defendants such being a material element on a prima facie case of violation of section 725.1, Code, 1966. Said motion having been overruled by the court, the same was renewed at the close of all the evidence and on the further ground that the defendants were engaged in the exercise of conduct privileged by the First Amendment to the United States Constitution made applicable to the prosecution of the cause by the Fourteenth Amendment to the United States Constitution, and that there was no showing in the record of a clear and present or material and substantial danger or threat to any substantial and compelling interest of the State. The renewed motion with the additional grounds incorporated in it was likewise overruled.

The defendants assign and rely upon for reversal two claimed errors. (1) The district court erred in holding that public nudity alone constitutes the crime of indecent exposure, and (2) the district court erred in not recognizing that defendants' conduct was privileged as an exercise of free speech, and could be punished only upon a showing by the State that the conduct created a clear and present danger to a substantial evil the State may prevent.

I. The statute under which the defendants were charged, section 725.1, Code, 1966, provides, "Lewdness—indecent exposure. If any man and woman not being married to each other, lewdly and viciously associate and cohabit together, or if any man or woman, married or unmarried, is guilty of open and gross lewdness, and designedly makes an open *and* indecent *or* obscene exposure of his or her person, or of the person of another, every such person shall be imprisoned in the county jail not exceeding six months, or be fined not

exceeding two hundred dollars." (emphasis supplied).

We note particularly the employment of the conjunctive *and* and the disjunctive *or* in the phrase "and designedly makes an open *and* indecent *or* obscene exposure of his or her person, * * *". This would indicate to us that the open exposure of a person is indecent per se but not necessarily obscene; such it appears to us is the obvious intent of the statute. While it is true that the two words "indecent" and "obscene" have been used as synonyms for each other, we find that eminent linguistic scholars and semanticists do not agree they are so interchangeable. In the Modern Guide to Synonyms, published as "Use the Right Word" (Funk and Wagnalls, 1968), edited by S. I. Hayakawa, an internationally recognized authority on semantics and the author of the widely acclaimed book, "Language in Action", we find Professor Hayakawa concludes that the words "immodest, improper, indecorous, indelicate and unseemly" are synonyms for "indecent". Modern Guide to Synonyms, p. 302. In all fairness, however, we must observe that the words "indecency" and "obscenity" or "indecent" and "obscene" have been used as synonyms for each other in a multitude of cases too numerous to cite here.

■ We do not, however, intend to engage in rhetorical hairsplitting as we perceive the question before us which is presented by defendants' first assignment of error is basically one of statutory constuction. We recognize that penal statutes are inelastic and cannot by construction be made to embrace cases plainly without the letter, though within the reason and policy of the law. Statutes defining crimes are to be strictly construed and not to be held to include charges plainly without the fair scope and intendment of the language of the statute, though within its reason and policy, and in the event of doubts they are to be resolved in favor of the accused. State v. Lovell, 23 Iowa 304, 305; State v. Hill, 244 Iowa 405, 407, 57 N.W.2d 58, 59,

and cases therein cited. Kuhn v. Kuhn, 125 Iowa 449, 451–452, 101 N.W. 151, 152.

■ In United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 5 L.Ed. 37, Chief Justice Marshall, speaking for the court with respect to this rule of construction, said, "The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the Legislature, not in the judicial department. It is the Legislature, not the court, which is to define crime and ordain its punishment. It is said that, notwithstanding this rule, the intention of the lawmakers must govern in the construction of penal as well as other statutes. This is true. But this is not a new, independent rule which subverts the old. It is a modification of the ancient maxim, and amounts to this: that, though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the Legislature. The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words, in their ordinary acceptation, or in that sense in which the Legislature has obviously used them, would comprehend. The intention of the Legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no reason for construction. The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of the words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle that a case which is within the reason or mischief of a statute is within its provisions so far as to punish a crime not enumerated in the statute because it is of equal atrocity or of kindred character with those which are enumerated."

■■ The thrust of the arguments advanced in support of defendants' first assignment of error is that public nudity alone or per se does not constitute the crime of indecent exposure. They argue inferentially that a violation of the statute requires (a) open, public nudity and (b) an indecent intent as opposed to the simple intent to do the act complained of, and that the two elements are exclusive of each other. They seem to insist that reversal is required because while the record is clear that the defendants were nude in public and intentionally so, the record also shows that they did nothing further in the way of conduct that was indecent, obscene or suggestive of sexual conduct or behavior. They reason that the conjunctive wording of the statute (open and indecent) means that mere open nudity is not enough, nor is the general intent to expose one's self in public enough to justify conviction. They contend that there must be a present intent to do something indecent or obscene while publicly unclothed. On the other hand, the State argues that public nudity per se is a violation of the statute, conceding that there are some limited exceptions such as being unclothed in the office of a doctor, or while posing as an artist's model and, of course, accidental nudity. We come up against similar problems with both of the above positions, that is to say, the position of the defendants and that of the State. The defendants' position is too broad and would permit behavior that obviously was intended to have been proscribed by the statute. The State's view that nudity per se is a violation is likewise too broad because it could conceivably encompass behavior that is not in fact objectionable to the public concept of morality or violative of the ordered functioning of society. We conclude the statute prohibits public nudity that is not accidental when the public exposure occurs in a context in which firmly accepted norms or rules of public behavior or decency require that people remain covered or clothed. Hence, if an individual intentionally disrobes in a public meeting and the ordinary rules of societal behavior dictate that persons in public meetings remain clothed, the statute has been violated. The violation is the *act of public nudity*, combined with the intent to perform the act in a place or in a context in which the act violates recognized and accepted norms of social behavior.

We find this rationale acceptable because it still requires more than mere public nudity. It requires public nudity or exposure that is intentionally undertaken to violate the accepted rules of behavior as those rules relate to the particular factual situation in which the exposure occurs. Thus it is not the nudity alone, but it is the act of disrobing, plus the intent to do it in a place where social norms would be knowingly violated that provides the illegality. Such a rationale concentrates not on the person's actions before, during, or after his public exposure, but rather this interpretation centers primarily on the context or factual circumstances in which the exposure occurs. It does require an intent to do the exposure with the design of violating well-recognized rules of behavior for the specific context.

This rationale also appears implicit in the so-called exceptions to this statute, that is, artists' models, patients before doctors and nurses, accidental nudity, etc. These exceptions seem to mean that in certain contexts where normal behavior allows nudity, the statute has no application. Our interpretation of the statute adopts the logic of the exceptions and makes such logic the basic criterion for determining whether the statute has been violated in all other cases of exposure or nudity. As examples, the same rules or norms which permit nudity in doctors' offices, nudist camps, on the stage, or in the artists' studios are not applicable to public behavior on the streets, in parks or in public gatherings. Our view of the statute requires a consideration of the norms of behavior for the setting in which the nudity occurs. If an individual intentionally exposes his body, or the private parts thereof, with the concomitant

intent to breach the public rules of behavior, then the statute in question is violated.

It is conceded that the exposure of the defendants was before a mixed audience at a meeting advertised as being open to the general public. Thus, the record shows the defendants intentionally set out to break the well recognized rules regarding the wearing of apparel at public meetings when they disrobed. They were devoid of clothing in public, and such nudity was undertaken with the intent of violating the normal and accepted rules of behavior at public meetings.

■ While the intent with which the defendants disrobed themselves was, as they now contend, for a high purpose and as a means of protest, we do not deem the question of such intent to be involved here. Nowhere in section 725.1 of the Code is it stated that such knowledge or intent is a necessary element in order to make the act illegal. As this court said in State v. Dunn, 202 Iowa 1188, 1189, 211 N.W. 850, at page 851, "It is quite universally recognized at this day that the Legislature may forbid the doing of an act and make its commission a crime without regard to the intent or knowledge of the doer. Whether a criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined as a matter of construction from the language of the act, in connection with its manifest purpose and design." State v. Dahnke, 244 Iowa 599, 603, 57 N.W.2d 553, 555–556; State v. Dobry, 217 Iowa 858, 250 N.W. 702; State v. Schultz, 242 Iowa 1328, 50 N.W.2d 9; 22 C.J.S. Criminal Law § 30, pp. 100–107; State v. Striggles, 202 Iowa 1318, 1320, 210 N.W. 137, 49 A.L.R. 1270; State v. Wharff, 257 Iowa 871, 875, 134 N.W.2d 922. Irrespective, therefore, of the absence or presence of any intent to do or refrain from doing any act which might have had an obscene or sexual connotation while disrobed, public disrobing under the conditions set out above, is forbidden by the statute in this case. The will or volition of the person charged to expose his person or those parts which "instinctive modesty, human decency, or common propriety require shall be customarily kept covered in the presence of others", (quoting from State v. Galbreath, 69 Wash.2d 664 (1966), 419 P.2d 800), is involved and not a specific intent to say or do anything in particular while so exposed.

Specifically, the defendants insist their acts in disrobing were in the nature of protests against the exploitation of woman by Playboy Magazine; in other words, they were protesting nudity by completely undressing. They do not pretend they were calling public attention to any acute social, political or economic grievance, neither were they activated by any deeply ingrained beliefs as are the Doukhobors of the Western Canadian provinces, an extreme religious sect, who disrobe publicly to protest real or fancied discriminations against them, such as burdensome taxes or governmental interferences with their chosen way of life.

We find no merit in the defendants' first assignment of error.

II. In their second assignment of error the defendants contend their exposure in the college meeting was conduct that is privileged as an exercise of free speech and could be punished only upon a showing it created a clear and present danger of some substantial evil that the State could prevent.

Defendants rely on Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L. Ed.2d 731. The Tinker case involves students who wore black arm bands in protest of the Vietnam war. In reversing the lower court's refusal to grant an injunction against the arm band rule and for nominal damages, the court pointed out, at 393 U.S. 503, 508, 89 S.Ct. 733, 737, that the issue raised in the appeal "does not concern aggressive, disruptive action or even group demonstrations. Our problem involves di-

rect, primary First Amendment rights akin to 'pure speech.'" Such a characterization of the problem points out an important distinction between the Tinker case and the situation before us. The propositions defendants contend for are correct statements of the now familiar "clear and present danger" test, and the so-called "Hand Rule" enunciated in United States v. Dennis, 183 F.2d 201, 212, to-wit, whether or not the gravity of the evil discounted by its improbability justifies such invasion of free speech as is necessary to avoid the danger. These familiar tests for measuring whether speech can be limited under given circumstances are not applicable in the case here. The case before us involves a statute that regulates non-speech activities or conduct, whereas all of the cases cited by the defendants involve statutes that were applied to factual situations involving what has been characterized judicially as "pure speech", or right to assembly. In Whitney v. California, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095, for example, the prosecution was brought under a statute prohibiting criminal syndicalism, and the defendant was prosecuted for being a member of the Communist Labor Party in California. Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131, involved a provocative speech, and defendant was prosecuted under a municipal breach of the peace ordinance. The court held that in view of the construction placed upon the statute by the state court, it was overly broad and encompassed protected forms of speech in its breadth. (See 337 U.S. 1, 5–6, 69 S.Ct. 894, 896). Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155, involved consideration of ordinances or statutes prohibiting the passing out of handbills on a public street, and a statute preventing canvassing without prior police permission. These statutes were either held to be unconstitutional prior restraints on allowed speech, or were judged to be too restrictive on speech when balanced against the governmental interest supposedly justifying the statutes.

The case before us involves a criminal statute which makes it a crime, among other things, to expose one's self under circumstances where common standards of decency require persons to be covered. Defendants intentionally took off their clothes in a public meeting to demonstrate their opposition to Playboy Magazine's use of feminine nudity for commercial purposes. In addition to the statutory construction argument, the appellants say their conduct is protected by the First Amendment as a form of speech, since they intended by their exposure to express graphically and symbolically an idea. Thus their contentions are quite closely analogous to the arguments made by the defendant in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672, which involved the defendant's burning his draft card on the steps of a Boston courthouse in front of a large crowd. His stated motive was to influence others in taking anti-war and anti-selective service positions. O'Brien was charged with violating federal laws on both failure to have his draft card in his possession and mutilation or destruction of the same. In the aspect of the O'Brien case most relevant to the case at bar, O'Brien argued that the destruction of his draft card was protected "symbolic speech" within the meaning and protection of the First Amendment, arguing that the freedom of expression which the First Amendment guarantees includes all modes of "communication of ideas by conduct", and that his conduct was within this definition because he burned his draft card in "demonstration against the war and against the draft". Chief Justice Warren, writing for an 8 to 1 majority, rejected that argument in the following terms,

"We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea. However, even on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the First Amendment, it

does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." 391 U.S. 367, 376, 88 S.Ct. 1673, 1678–1679.

■ Thus far in O'Brien the United States Supreme Court has held every action that is not pure speech but is conduct that expresses an idea is not necessarily protected activity. In instances where both speech and nonspeech are present in a communication, if there is a sufficient governmental interest in regulating whatever subject matter the "nonspeech" conduct has violated, then the First Amendment can allow limits on such conduct. Consequently, when we have conduct that is not in and of itself speech, such as the public exposure of the defendants at the protest meeting in the case before us, if there is a sufficient governmental interest in regulating public, indecent exposure, then that interest can justify the possible minor encroachment on the First Amendement.

■ The governmental, or state's interest in this case is compelling, or substantial, or sufficient if:

(1) the regulation is within the constitutional power of the government;

(2) it furthers an important or substantial governmental interest;

(3) the governmental interest is unrelated to the suppression of free expression;

(4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of the governmental interest. (United States v. O'Brien, supra, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672). Further, in O'Brien, supra, 391 U.S. at 382, 88 S.Ct. at 1682, the Court said,

"The case at bar is therefore unlike one where the alleged governmental interest in regulating conduct arises in some measure because the communication allegedly integral to the conduct is itself thought to be harmful." (The court had just pointed out that O'Brien was being punished only for his conduct in burning his draft card and nothing more, i.e., punishment for the noncommunicative impact or aspect of his conduct).

"In Stromberg v. People of State of California, 283 U.S. 359, 51 S.Ct. 532, 75 L. Ed. 1117 (1931), for example, this Court struck down a statutory phrase which punished people who expressed their 'opposition to organized government' by displaying 'any flag, badge, banner, or device.' Since the statute there was aimed at suppressing communication it could not be sustained as a regulation of noncommunicative conduct."

■ So in the case before us the statute involved is not a regulation of communication but is aimed at regulating and punishing public exposure of the body. Thus, the defendants were convicted for the noncommunicative aspect of their actions, that is, the public nudity, and not for the ideas they sought to express.

■ It is also important to note that the governmental interest involved in the statute meets the four criteria of the O'Brien case set out above. Our Legislature has the power within constitutional limits to define crimes. The State can protect the public order and decency by proscribing public behavior that violates well-founded and recognized norms of behavior. Section 725.1, Code, 1966, is related to preventing indecent exposure, not free speech. The incidental effect of the prosecution of the defendants under the statute involved results in little real restriction on the First Amendment freedoms because of the number of viable alternatives other than public nudity that were available to defendants to express their views. Section 725.1 is not aimed at regu-

lating communication at all, but only proscribes public exposure of the body or its private parts.

In a concurring opinion in United States v. O'Brien, supra, Justice Harlan limits the majority opinion in the following language, "I wish to make explicit my understanding that this passage does not foreclose consideration of First Amendment claims in those rare instances when an 'incidental' restriction upon expression, imposed by a regulation which furthers an 'important or substantial' governmental interest and satisfies the Court's other criteria, in practice has the effect of entirely preventing a 'speaker' from reaching a significant audience with whom he could not otherwise lawfully communicate. This is not such a case, since O'Brien manifestly could have conveyed his message in many ways other than by burning his draft card." Justice Harlan's observation on the number of alternatives to the particular nonspeech conduct involved applies with equal force to the defendants in the case before us.

 In support of the view expressed in O'Brien that First Amendment rights can be limited in some degree, especially where speech and nonspeech conduct are both present, see Cox v. Louisiana, 379 U. S. 536, 544–545, 85 S.Ct. 453, 464–465, 13 L.Ed.2d 471; and, id., 379 U.S. 559, 563–565, 85 S.Ct. 476, 480–481, 13 L.Ed.2d 487. Also when pure speech is involved, even it can be regulated in a statute narrowly drawn and limited to define and punish specific conduct within the power of the state. Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213; Chaplinsky v. New Hampshire, 315 U.S. 568, 573–574, 62 S.Ct. 766, 770, 86 L.Ed. 1031. In Chaplinsky the conduct regulated was the use of words in a public place likely or with a direct tendency to cause a breach of the peace.

While Chaplinsky does lend some support to the propositions outlined in United States v. O'Brien, supra, it is only by analogy. In Chaplinsky the court dealt with *speech* that presented a clear and present danger of a breach of the peace which is an evil the state has a right to prevent. In O'Brien and in the case before us the punishable offense is the nonspeech conduct which is, apart from any tangetial relation to speech, an evil that the state has a right to proscribe under the criminal law.

 Utterances and actions as well which are no essential part of any exposition of ideas, or are of such slight social value as a step to truth that no benefit may be derived from them, are clearly outweighed by social interest in order and morality. Chaplinsky v. New Hampshire, supra.

We are forced to conclude the defendants' conduct at the time and place in question in completely disrobing, was not privileged conduct as an exercise of free speech.

This case is, therefore, affirmed.

Affirmed.

MOORE, C. J., and LARSON, STUART, and RAWLINGS, JJ., concur.

Dissent by BECKER, J.

Dissent by LeGRAND, J., joined by MASON, J.

UHLENHOPP, J., takes no part.

BECKER, Justice (dissenting).

I respectfully dissent.

Study of the record in this case, the statute involved, our prior interpretation and the decisions of other appellate courts dealing with obscenity and indecency, all convince me that an essential element of the crime charged is missing in this case. The case involves basic rights of the public at large and of the individuals involved. Therefore the reasons for the dissent should be given.

I. All crimes in this State are statutory. The common law may be referred to for purposes of definition but common law crimes are not recognized. Estes v. Carter, (1860) 10 Iowa 400; State v. Lamb, (1929) 209 Iowa 132, 227 N.W. 830; State v. Wallace, (1966) 259 Iowa 765, 145 N.W.2d 615.

As to construction of criminal statutes, Knott v. Rawlings, 250 Iowa 892, 895, 896, 96 N.W.2d 900, 901, 73 A.L.R.2d 868 says:

" 'Words and phrases shall be construed according to the context and the approved usage of the language; * * *.' Section 4.1(2), 1958 Code. It is settled rule in this state that criminal statutes are to be strictly construed, and doubts, if any, are to be resolved in favor of the accused. Such statutes may not be extended by implication to include an offense not clearly within the fair scope of the language used. (Citations). In Lever Brothers Co. v. Erbe, 249 Iowa 454, 468, 87 N.W.2d 469, 478, we said: ' "It is the fundamental rule * * * that no one may be required * * * to speculate as to the meaning of penal statutes." ' "

In State v. Leonard, 255 Iowa 1365, 1369, 124 N.W.2d 429, 432, we noted Chief Justice Marshall's words on the subject: "United States v. Wiltberger, 5 Wheat. (U.S.) 76, 5 L.Ed. 37, in which he said: ' * * * To determine that a case is within the intention of a statute, its language must authorize us to say so. *It would be dangerous, indeed, to carry the principle that a case which is within the reason or mischief of a statute is within its provisions so far as to punish a crime not enumerated in the statute because it is of equal atrocity or of kindred character with those which are enumerated.*' " (Emphasis supplied.)

We are now in the very situation against which Chief Justice Marshall warned so long ago; i. e., because we disapprove the actions of these defendants we are tempted to rationalize to place their actions within a statute that was never meant or designed for regulation of this type of conduct.

II. We should interpret the statutory language involved in conjunction with the entire statute. The statute in its entirety reads:

"Lewdness-indecent exposure. If any man and woman not being married to each other, lewdly and viciously associate and cohabit together, *or* if any man or woman, married or unmarried, is guilty of open *and* gross lewdness, *and* designedly makes an open *and* indecent *or* obscene exposure of his or her person, or of the person of another, every such person shall be imprisoned in the county jail not exceeding six months, or be fined not exceeding two hundred dollars." (Emphasis supplied.) Section 725.1, Code, 1966.

The legislature was obviously dealing with a broad range of lewdness, obscenity and indecency when it enacted the statute in its present form. To me at least, the statute very clearly requires both a lewd design or intent and an open exposure. Reference to semantic experts cannot change this plain intent. The conclusion that the statute makes illegal "the act of disrobing, plus the intent to do it in a place where social norms would be knowingly violated" without lewd design is not borne out by any reasonable interpretation of the legislation. Further, if the statute did so state, I submit it would be unconstitutionally vague.

III. Interpretation of our statute to require both a lewd intent *and* an open exposure is also required if comparison is made to other similar statutes. This is strongly argued by defendants. They contend the statutes fall into two broad classifications; (1) those that proscribe public exposure in and of itself, regardless of indecent intent or effect; and (2) those that require that the public exposure be coupled with an indecent or obscene intent.

The State denies the validity of the distinction. We think an examination of var-

ious statutes shows the distinction does exist. The operative words of Iowa's statute are: " * * * or if any man or woman, married or unmarried, is guilty of open *and* gross lewdness, *and designedly* makes an open *and* indecent or obscene exposure of his or her person, or of the person of another, * * *." (Emphasis supplied.) Section 725.1, Code, 1966.

By contrast the operative words of the Michigan statute read: "'* * * and any man or woman, married or unmarried, who shall be guilty of open and gross lewdness and lascivious behavior, *or* who shall designedly make an open *or* indecent *or* obscene exposure of his or her person, or the person of another, shall be guilty of a misdemeanor, * * *.' (Emphasis added.) Section 335 Penal Code of Michigan, Act. No. 328 of the Public Acts of 1931."

A comparison of the words used in the two statutes indicates the difference. The Michigan statute, because of the use of the word "or", may well be interpreted to mean an "open" exposure violates the statute whether there is an indecent or obscene intent or not. The Michigan court so held in People v. Ring, (1934) 267 Mich. 657, 255 N.W. 373, 93 A.L.R. 993, but now seems to be divided on the subject. People v. Hildabridle, (1958) 353 Mich. 562, 92 N.W.2d 6; Annotation, 94 A.L.R.2d 1353, 1390.

The effect of such words as "designedly made an open *and* indecent or obscene exposure" is probably most succinctly stated in Ex Parte Correa, 36 Cal.App. 512, (1918) 172 P. 615, 616: " 'Every person who *willfully and lewdly,* either: One. Exposes his *person,* or the *private parts* thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby; * * * is guilty of a misdemeanor.' " (Emphasis supplied.)

The court quite briefly noted: "It is manifest, upon an inspection of the complaint, that it failed to charge the offense described in the statute. It was not alleged that the acts described were done 'lewdly,' nor were any words of equivalent meaning used in the complaint. An essential element of the crime being thus omitted, the complaint did not state a public offense."

A strict construction of the statute (to which defendants are entitled under our rules) makes indecent or obscene intent an essential element of indecent exposure. Defendants do not say the State can not prohibit public nudity per se. They argue the State has not done so and they cannot be convicted of a crime that doesn't exist.

But now the court eliminates lewd intent as an element of this crime. We have said criminal intent should ordinarily not be eliminated as an essential element of a crime. State v. Schultz, 242 Iowa 1328, 1331, 1332, 1334, 50 N.W.2d 9, 11–12:

"Generally, a criminal intent is essential before it can be said that an offense has been committed. * * *

 * * * * * *

"But we think it should be, and is, the law that the legislative intent to eliminate guilty knowledge should be clearly apparent. * * *

 * * * * * *

" * * * We are not disposed to extend further the doctrine of guilt without intent or knowledge. Defendant's motion for directed verdict should have been sustained." State v. Schultz, supra, was quoted with approval in State v. Drummer, (1962) 254 Iowa 324, 117 N.W.2d 505 and State v. Ramos, (1967) 260 Iowa 590, 149 N.W.2d 862. I submit the present interpretation of the statute violates our normal rules of construction.

IV. The encyclopedias and the statutes uniformly treat indecent exposure as a form of lewdness, 53 C.J.S. Lewdness § 2(c) (3), p. 9; 50 Am.Jur.2d, Lewdness, Indecency and Obscenity, § 17, p. 472, and so have the cases. See State v. Sousa, (1964) 2 Conn.Cir. 452, 201 A.2d 664, for a good short review of the law of indecent exposure.

Study of the cases indicates most indecent exposure prosecutions, whether under common law or statutory authority, may be classified under four broad headings:

1. Those concerned with what might be called the individual sex deviant; i. e., the person deliberately exposes himself usually to one or members of the opposite sex. State v. Stice, 88 Iowa 27, 55 N.W. 17.

2. Those concerned with acts of exposure which were part of other sexual activity. State v. Matje, Mo. (1954), 269 S.W.2d 128.

3. Those concerned with prosecution of various entertainment acts; i. e., burlesque, night club acts and the like. Usually, but not always, prosecuted under special statutes.

4. Those concerned with prosecution of nudist camps or colonies.

All of the first three types of cases have sexual connotations. The requirement of indecent intent is usually resolved from the type of exposure and the surrounding circumstances. With the lewdness concept present the reference to social norms can be rationalized.

The nudist camp cases pose an entirely different problem. In such cases defendants argue (as here) that nudity is not per se indecent, the statute requires a showing of something more than mere nakedness and if the act was innocent of sexual overtones, it is not proscribed. The response of the courts has not been uniform.

In Michigan the court held nudists who, on their own property and out of view of the general public, went without clothing in the presence of persons whose sense of decency and propriety was not offended, were nevertheless guilty of the offense of indecent exposure. People v. Ring, (1934) 267 Mich. 657, 255 N.W. 373, 93 A.L.R. 993. Twenty-four years later the Michigan Supreme Court reexamined the problem but split 3 to 3 on the decision. People v. Hildabridle, (1958) 353 Mich. 562, 92 N.W.2d 6. The Iowa Attorney General, Norman A. Erbe, relied upon and followed People v. Ring, supra, in an opinion dated July 30, 1957. He concluded nudists would be subject to prosecution in Iowa.

New York's struggle with the problem took a different tack. People v. Burke (1935) 267 N.Y. 571, 196 N.E. 585, reversed a conviction of nudists who were prosecuted for holding nude exercises and swimming sessions in a private gymnasium and swimming pool. The legislature promptly enacted a new statute but this legislation has been construed to proscribe nudism for financial gain. Thus nudism, per se, was held not to be illegal in New York. Excelsior Pictures Corp. v. Regents of University of State of New York (1957) 3 N.Y.2d 237, 165 N.Y.S.2d 42, 45, 144 N.E.2d 31, 34; Cf. Annotation, 94 A. L.R.2d at 1380, 1381, Desmond, J., states for the court:

"* * * For more than a century the New York courts have held that exposure of the body to the view of others is not criminal if there be no lewd intent (Miller v. People, 1849, 5 Barb. 203; Cf. People ex rel. Lee v. Bixby, 4 Hun 636, opinion in 67 Barb. 221). Even the strictest moralists tell us that 'an obscene nude is a nude that allures' (Vermeesch, Theologiae Moralis, 1936, p. 94)."

Both Ohio and Texas have held nudism without more is illegal in those states. State ex rel. Church v. Brown (1956) 165 Ohio St. 31, 59 Ohio Ops. 45, 133 N.E.2d 333; Campbell v. State (1960) 169 Tex. Cr.R. 515, 338 S.W.2d 255. Certiorari was denied by the United States Supreme Court in both cases.

The foregoing analysis is deemed necessary because our study reveals no cases where defendants claimed they were using nudity as a form of protest; i. e., their actions were not meant to be lewd, indecent

or obscene and were not so interpreted by their audience. In this context, as in the case of the nudists, the question of whether the statute requires an indecent or obscene intent becomes acute.

As in the nudist colony cases, I would hold the statute requires something more than mere nudity which might offend the sense of propriety of persons not present. If the acts are shown to be inoffensive to those present, the conviction should not depend on the social or moral norms of those not present. This is an important point here.

The evidence shows no one was sufficiently offended to protest, or even stop talking. The meeting went right on. No one left the premises. No one complained to the police. As far as the record shows no community reaction took place. There is no basis for criminal condemnation of this action *as it applies to the people present at the meeting*. Yet the jury was told nudity in public violated the statute and no inquiry was allowed as to whether the action shocked the viewing public, or any member thereof. And no inquiry was allowed as to whether, under the circumstances, it shocked the jury sufficiently to find these defendants guilty of a crime. Thus the social and moral norms of the law enforcement officials and the court became the sole criteria.

This is clear both from the instructions and the jury's question. The court's Instruction No. 11 required the State to prove:

"1. That on or about the 5th day of February, 1969, the particular defendant under consideration did make an open and indecent or obscene exposure of his or her person.

"2. That said exposure, if such there was, was made designedly."

Instruction No. 12 then tells the jury the exposure is indecent regardless of intent or effect as to obscenity if the exposure is made in public.[1]

The jury after deliberating some three and one-half hours asked the following question and received the following additional instruction:

"EXHIBIT F: 'The last sentence in your instruction No. 12 seems to determine our decision. However, it is so absolute that exceptions to this rule have been observed, i. e. doctors and nurses are "others", artists and sculptors are "others". Our question is, "Is the instruction as to the 'observation of others' absolute or does the rule or reason admit exceptions?" ' "

"ANSWER TO EXHIBIT F: By way of answer thereto you are informed that doctors, nurses, artists and sculptors would not be included in the word 'others' as it appears in the last sentence of Instruction No. 12. Persons in attendance at an open

---

1. "Instruction No. 12. The words 'open and indecent or obscene exposure of his or her person' included in proposition number 1 of Instruction No. 11 mean an exhibition of those parts of the human body which instinctive modesty, human decency, or natural self respect require shall be customarily kept covered in the presence or view of others. They contemplate an act done in such a place or under such circumstances that the exhibition, if any, is liable to be seen by others, and is presumably made for that purpose, or with reckless disregard of the decencies of life. A person, if so inclined, may dress himself or herself in nothing more substantial than the innocence of Eden provided he or she does not 'expose' himself or herself in that condition. *An exposure becomes 'open and indecent or obscene' only when a person indulges in such a practice at a time where as a reasonable person, he or she knows, or ought to know, that his or her act is open to the observation of others.*" (Emphasis supplied).

meeting would be included in the word 'others' as used in said instruction."

When the court's instruction and the jury's question are thus reviewed the unfairness of the instruction in light of the present posture of this court becomes apparent.

Suppose the jury had been instructed that indecent exposure requires more than mere public nudity? Suppose further the jury was told they must find the defendants knew their "act violates recognized and accepted norms of social behavior"? Might not the jury have reached a contra result? Since no one was shocked I believe a different result would have been quite possible.

V. The jury's question emphasizes the dilemma occasioned by the trial court's instruction, the new rule announced here and the ready acceptance of judicially inspired exceptions. The jury properly construed the instruction to mean nakedness in public is criminal, without exception. They, in effect, asked, "Aren't there any exceptions such as doctors, nurses, artists and sculptors?" The court, in effect, answered, "Yes, but persons at an open meeting are not excluded."

The jury's question and the trial court's answer both indicate how acute the problem becomes if the statute *as written* is construed to include nudity alone as an offense.

If "others" does not include doctors, nurses, artists and sculptors, how far are the exceptions to be extended by judicial construction? Are students, masseurs, physical therapists and the like, included?

Is a differentiation of sexes necessary? Especially in light of current recognition of homosexuality in our society? If not, how do we handle the common bathhouse or locker room problem at public swimming pools, gymnasiums, Y.M.C.A.'s and the like?

All such questions are presumably answered by the court's new formula. If the action violates the "ordinary rules of social behavior" it is proscribed, otherwise not. In this case had the men defendants stripped to the waist they would presumably escape condemnation because hardly anyone is shocked by a man who is bare from the waist up. Of course the women defendants would be guilty because topless dress "violates a firmly accepted norm".

The trouble here is that the jury did not have the benefit of the new rule in this case. For this reason, if no other, a retrial should be ordered.

The jury's question illustrates the wisdom of the rule requiring us to limit ourselves to what the statute says. We should not interpret the statute as all inclusive and then grant our own judicially inspired exceptions as need arises or as suits our view of socially acceptable norms. This is the prerogative of the legislature within constitutional limits.

VI. This elimination of guilty knowledge or guilty intent as an essential element of the crime of indecent exposure opens our statute, *as now interpreted,* to serious constitutional challenge not considered by the majority. The majority's discussion of the constitutional issues involved entirely overlooks what seems to me to be the most important case on the subject. That is Smith v. California (1959) 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205, which is concerned with sale of obscene books. The Los Angeles City ordinance prohibiting sale of obscene books made no reference to guilty knowledge or intent. California interpreted the ordinance so as to dispense with proof of guilty knowledge or intent. So interpreted the ordinance was held to be unconstitutional. The United States Supreme Court said:

"California here imposed a strict or absolute criminal responsibility on appellant not to have obscene books in his shop.

'The existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.' Dennis v. United States, 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137 [1147]. Still, it is doubtless competent for the States to create strict criminal liabilities by defining criminal offenses without any element of scienter—though even where no freedom-of-expression question is involved, there is precedent in this Court that this power is not without limitations. * * *." The court then went on to declare the ordinance unconstitutional on the sole ground that guilty knowledge or guilty intent was eliminated as an essential element of the crime.

The majority's careful distinction in this case between "pure speech" and conduct "which is akin to pure speech" recognizes even regulation of nonspeech conduct may be an impermissible incursion on freedom of expression *unless there is a sufficient governmental interest in regulating the citizen's act*. Then "that interest can justify the possible minor encroachment on the First Amendment".

If we interpret the instant statute to require a lewd intent, or at least a lewd reaction on the part of the viewing public, our statute might stand constitutional muster. But we merely say there need only be shown a public nudity without either lewd intent or lewd result, it is hard to find the permissible governmental interest Rather we are too apt to be protecting out own notions of propriety, decency and morality. As stated in Smith v. California, supra: " * * * And this Court has intimated that stricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser. Winters v. People of State of New York, 333 U.S. 507, 509–510, 517–518, 68 S.Ct. 665, 667, 671, 92 L.Ed. 840 [846, 847, 850, 851]. * * *." (loc. cit. 80 S.Ct. at 217–218, 4 L.Ed.2d at page 210.)

Despite the majority assertion to the contrary defendants were protesting what, to them, was an important issue. Here the free expression of ideas is in fact being inhibited by a vague reference to violation of "the accepted norms of social behavior". Our democracy has enough strength and vitality to withstand such shocking conduct without resort to criminal sanction.

VII. Additional reasons might be given for reversal here. They all sum up to one conclusion. This is not an "indecent exposure" case and never was. Therefore the case should be reversed and ordered dismissed.

LeGRAND, Justice (dissenting).

Perhaps this case has already received too much public—and judicial—attention in view of the limited legal principles involved. Nevertheless I feel compelled to state briefly my reasons for dissenting.

I dissent only from Division I. My disagreement does not go to the ultimate question of guilt or innocence but to the failure of the trial court—and the majority —to submit the issue of lewdness for jury determination.

In short, defendants argue they were nude but not lewd. They say both are necessary to a conviction under section 725.1. I think they are right.

First, let me say there was plenty of evidence upon which defendants *could* have been found guilty of lewdness under this statute. But the issue was taken from them by the court's instructions. The importance of this is pointed up by the specific inquiry which the jury directed to the trial court on this very subject after they had been deliberating for some time.

Under these circumstances I find it strange that the majority so studiously

avoid any mention of this question. I have searched the opinion in vain for any reference to "lewd" or "lewdness", a term the statute uses three times. There is none.

Yet this—aside from the free speech argument—is defendants' sole justification for acts otherwise admittedly violative of the statute.

The majority admits *some* acts of nudity are permitted as exceptions under the law, although not specified in the statute, because such exhibitions are not *lewd*.

No one could disagree with such a reasonable interpretation of the law. All I want is for the jury to say whether *this* act of nudity was *lewd*. Defendants cannot otherwise be properly convicted of violating section 725.1. They should have a new trial.

MASON, J., joins in this dissent.