# IN THE COURT OF APPEALS OF IOWA

No. 18-2139
Filed February 19, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TIFFANI MARIE FINCH,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda,

District Associate Judge.


        A defendant appeals her conviction for operating a motor vehicle without

the owner's consent.  **AFFIRMED.**


        John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee.


        Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

As framed by the district court, we are asked to decide "the interesting evidentiary question of whether a ward, subject to a guardianship and conservatorship, can consent to the use of a vehicle still titled in that ward's name." Finding the ward, Carroll Blankenship, lacked capacity to consent, the court barred Tiffani Finch from introducing evidence that she had Blackenship's permission to operate his truck. *See* Iowa R. Evid. 5.104(a). The court then found her guilty of operating a motor vehicle without the owner's consent. Finch now contends the pretrial ruling on admissibility was wrong and seeks a new trial. Because the district court properly analyzed the issue of consent and the State proved Finch knew she did not have permission from the conservator to operate the truck, we affirm her conviction.

## I. Facts and Prior Proceedings

In October 2017, the probate court appointed Kelly Cogley as permanent guardian and conservator for eighty-nine-year-old Blankenship. The order accepted a report of the guardian ad litem that Blankenship did not have the ability to make decisions regarding his finances without the conservator's help.[1]

A few months later, Cogley informed the Newton police that several people were "trying to befriend" Blankenship, "to take advantage of him." They were spending time in his home, possibly taking his money, and driving his red 1990 Chevy truck without Cogley's permission. Those people included Finch and her boyfriend, Brian Wedeking. After officers completed their investigation, the State

---

[1] Blankenship retained his right to vote.

charged Finch with operating Blankenship's vehicle without the owner's consent, in violation of Iowa Code sections 714.1 and 714.7 (2018).

The State moved in limine to exclude evidence Blankenship gave Finch permission to use the truck. The State argued because Blankenship could not legally consent, that testimony would be irrelevant. The court denied the motion.

> At this point, the court is not willing to make a finding that, as a matter of law, Mr. Blankenship was not capable of giving consent nor is the court willing to state, as a matter of law, that he was competent to give consent. At this point, the court feels that that is a question of fact that needs to be more flushed out in the testimony, so the court will deny the motion in limine, which in effect would have precluded the defendant from saying she received Mr. Blankenship's permission, or had Mr. Blankenship's permission. The issue of consent, the court feels, can be better addressed in the instructions to the jury at the close of the case.

Before the jury started to hear evidence, the parties returned to the court for guidance on the legal question of whether Blankenship could, as a matter of law, consent to use of his truck while under a conservatorship.[2] The State informed the court if it ruled the ward could not consent, Finch agreed to a trial on the minutes. If the court ruled consent was a fact question, the State planned to seek an interlocutory appeal. The district court agreed to hear evidence on this initial question—outside the presence of the jury.

At that hearing, Newton police officer Kyle Lovan testified to fielding Cogley's report that people had been driving Blankenship's truck without her permission. Officer Lovan went to Blankenship's house in mid-December 2017. When he arrived, he found Finch and Wedeking. The officer told them Cogley was

---

[2] At the State's request, the court took judicial notice of the entire file involving the establishment of a guardianship and conservatorship for Blankenship. But the court said it would indicate in its ruling what specific information it relied upon.

Blankenship's "power of attorney" and they should not be driving his truck without her permission. During the visit, the officer also spoke to Blankenship, who said "it was okay" for Finch to drive the truck.

In early January, Cogley again asked police to go to Blankenship's home and speak with the unwanted guests. While there, Officer Lovan noticed the truck was gone and later saw Finch pull into the driveway. Lovan arrested her for driving the vehicle without the owner's consent.

Cogley testified Blankenship did not have a driver's license and the truck was not insured. Cogley did not worry Blankenship would drive, given his limited mobility. But she told him no one else should operate his truck. He grumbled "it was none of [her] business." Despite his retort, Cogley understood it was her duty as conservator to manage his assets. She was concerned someone operating the truck without permission would incur liability for accidents.

Finch also testified. She said Blankenship had been friends with her grandfather. And she knew him as a regular customer at the Hy-Vee café where she worked in 2011. She testified she started visiting Blankenship daily in 2017. She admitted driving his truck but said she had his permission. She testified she ran errands for him and took him to a doctor's appointment. She claimed she paid for insurance on the truck for December 2017 but it was only liability insurance. She testified she knew then Blankenship was subject to a conservatorship because he told her he could not access his finances. She also testified Cogley told her in mid-December she was not allowed to drive the truck.

The court concluded as a matter of law that being a ward deprived Blankenship of the capacity to consent to Finch's operation of his vehicle. As its

bottom line, the court concluded neither party could introduce evidence that Blankenship granted Finch permission to drive his truck. The court noted Finch "was fully aware for months" that the court had appointed Cogley as guardian and conservator for Blankenship, that Cogley had control of his finances, and that Finch could not drive his truck without Cogley's permission. Given Finch's awareness, the court decided she could not reasonably presume Blankenship had authority to give his implied consent to drive the truck. Following a bench trial on the minutes of testimony, the court found Finch guilty as charged.

Finch appeals the district court's ruling on the admissibility of evidence under Iowa Rule of Evidence 5.104(a).

## II. Scope and Standards of Review

We review a ruling on a preliminary question of the admissibility of evidence under rule 5.104(a) for the correction of legal error. *See State v. Veverka*, ___ N.W.2d ___, ___, 2020 WL 499728, at *3 (Iowa Jan. 31, 2020). But the State contends "the substantive issue" before us "is really the sufficiency of the evidence." We do not read Finch's brief as raising a question of substantial evidence. If anything, the district court actually ruled on a joint request to adjudicate a point of law, though the parties did not call it that. *See State v. Wilt*, 333 N.W.2d 457, 460 (Iowa 1983) ("Iowa courts may look to the substance of a motion rather than its label."). That motion lies for the resolution of legal issues, not factual disputes. *Id.* As the district court confirmed:

> [T]he general facts pertaining to this evidentiary question are undisputed: Mr. Blankenship owned a vehicle, Mr. Blankenship became a ward under a full guardianship and conservatorship although his vehicle remained titled in his name (633.639), and Mr. Blankenship ostensibly allowed [Finch] to use his vehicle.

We examine the district court's interpretation of the relevant statutes for correction of legal error. *See State v. Tong*, 805 N.W.2d 599, 601 (Iowa 2011).

**III. Discussion**

We start with the criminal statute at issue. A defendant commits the aggravated misdemeanor of operating a vehicle without the owner's consent when that person takes possession or control of a self-propelled vehicle, which is "the property of another, without the consent of the owner of such, but without the intent to permanently deprive the owner thereof." Iowa Code § 714.7. The legislature designated a violation of section 714.7 as a lesser included offense of theft. *Id.*

General criminal intent is an element of section 714.7. "This is true even though the section speaks of intent only in terms of a characteristic not required: permanence of purpose need not be shown." *State v. McCormack*, 293 N.W.2d 209, 212 (Iowa 1980). So the State had the burden to prove beyond a reasonable doubt Finch acted with criminal intent. If she reasonably believed she had permission from the owner to drive the truck in January 2018, she would not be guilty of the offense charged. *See State v. Drummer*, 117 N.W.2d 505, 509 (Iowa 1962).

At issue here is Blankenship's ability to grant that permission. In its pretrial ruling, the court found Blankenship, as a ward, could not give either express or implied consent to use the truck under the probate code. At least five probate provisions are relevant. First, section 633.635 spells out the responsibilities of a guardian, here Cogley. Those responsibilities include taking reasonable care of

the ward's personal effects, including a vehicle. *See* Iowa Code § 633.635(1)(b).

Second, section 633.637(1) describes the powers of the ward:

> A ward for whom a conservator has been appointed shall not have the power to convey, encumber, or dispose of property in any manner, other than by will if the ward possesses the requisite testamentary capacity, unless the court determines that the ward has a limited ability to handle the ward's own funds.

Third, the title to the ward's property remains with the ward, but subject to the conservator's possession and the court's control for certain purposes. *Id.* § 633.639. Fourth, the conservator has "a right to, and shall take, possession of all of the real and personal property of the ward." *Id.* § 633.640. And fifth, the conservator has a duty "to protect and preserve" the ward's property. *Id.* § 633.641(1).

After reviewing the probate file, the district court noted the probate court "placed no limitations on the guardianship or the conservatorship and made no finding or determination that Mr. Blankenship had the limited ability to make any of his own decisions or handle any of his own affairs." *See id.* § 633.637. The district court also found Finch knew Blankenship's conservator had full authority over his affairs.

On appeal, Finch concedes the probate code permits Cogley to take possession of Blankenship's personal property, including his truck, and take reasonable care of it. But she contends the probate code "does not specifically say" Cogley's powers include "restricting access to the use of the [truck] by anyone other than the conservator and her authorized users."

We disagree with Finch's cramped interpretation of the probate code. As conservator, Cogley had both the right and the duty to take possession of

Blankenship's property and to protect and preserve it in his interests, even if title remained with Blankenship. *See In re Conservatorship of Rininger*, 500 N.W.2d 47, 50 (Iowa 1993) ("A conservator has a legal obligation to recognize the restrictions that the law places on the ward's authority."); *In re Fahlin's Guardianship*, 254 N.W. 296, 297 (Iowa 1934) (holding status of guardianship rendered ward legally incompetent to direct guardian's decisions as to property management). The probate court did not determine Blankenship had any limited ability to make decisions regarding his property. Without that determination, he did not have the legal ability to consent to Finch's use of the truck.

Finch responds if Cogley wanted to take possession of the truck, she could have removed it from Blankenship's property or sold it. But Finch then acknowledges Cogley did sell the truck shortly after Finch drove it in January 2018. And we do not find Blankenship's capacity to manage his property depended on its physical presence at his residence. Nor can the truck's physical presence at the house contribute to a reasonable belief by Finch that she had permission to drive it. *Contrast Drummer*, 117 N.W.2d at 509. Critically, Finch knew Blankenship was subject to a guardianship, and Officer Lovan told her in mid-December 2017 that she could not drive Blankenship's truck without Cogley's permission. Yet Finch was still driving the truck in January 2018.

The district court correctly decided Blankenship, as a ward, could not legally give another person permission to drive his truck. We reject Finch's request for new trial on the offense of operating a motor vehicle without the owner's consent.

**AFFIRMED.**