# IN THE COURT OF APPEALS OF IOWA

No. 22-0285
Filed February 22, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BO CHRISTOPHER ROBERT GARLAND,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Clarke County, Stacy Ritchie, Judge.

        A defendant appeals his conviction for operating a motor vehicle without the owner's consent. **REVERSED AND REMANDED FOR DISMISSAL.**

        Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

        Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**TABOR, Presiding Judge.**

Bo Garland contests his conviction for operating his mother's car without her consent. The missing element? Proof that Garland's mother did not let him drive her car. The State presented neither direct nor circumstantial evidence that Garland lacked his mother's consent. So we reverse his conviction and remand for dismissal.

### I. Facts and Prior Proceedings

Garland had a fight with his stepfather, Scott Carter, and drove away from the family's home in his mother's Honda CRV. The stepfather called the Clarke County sheriff to report the car was stolen. Deputy Wayne Keeler responded to that dispatch and located the Honda about an hour later. When Keeler turned on his lights and sirens, Garland sped away. Keeler chased in a marked patrol car. Before the pursuit ended, Garland reached speeds of thirty-five miles per hour over the limit. After arresting Garland, the deputy said he found marijuana in the car.

By trial information, the State charged Garland with second-degree theft, possession of marijuana, and eluding. Along with the trial information, the State filed minutes of testimony listing Keeler and Scott Carter as expected witnesses. Two months later, the State filed a notice of additional testimony identifying Bobbie Carter, Garland's mother, as an expected witness. But when it came time for trial, the State only called Keeler as a witness.

After hearing Keeler's testimony, the jury found Garland not guilty of theft but guilty of the lesser included offense of operating an automobile without the

owner's consent, in violation of Iowa Code section 714.7 (2022).[1]  The jury also acquitted Garland on marijuana possession but convicted him for eluding.  Garland appeals only his conviction for operating without the owner's consent.

## II.    Scope and Standard of Review

In criminal cases, the State faces a demanding burden of proof.  *State v. Davis*, 975 N.W.2d 1, 9 (Iowa 2022).  Due process "protects an accused against conviction except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt."  *State v. Crawford*, 972 N.W.2d 189, 199 (Iowa 2022) (quoting *Jackson v. Virginia*, 443 U.S. 307, 313–314 (1979)).

Despite that constitutional dimension, we review Garland's sufficiency-of-the-evidence challenge for the correction of legal error.  *See State v. Crawford*, 974 N.W.2d 510, 516–17 (Iowa 2022).  In doing so, we view the evidence in the light most favorable to the jury's verdict, drawing all reasonable inferences in its support.  *Id.*  In fact, the verdict binds us if it is supported by substantial evidence.  *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017).  Substantial evidence means proof that "would convince a rational fact finder the defendant is guilty beyond a reasonable doubt."  *Id.*  But evidence is insufficient if it raises only speculation.  *State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992).  In the end, the

---

[1] Section 714.7 provides:

> Any person who shall take possession or control of any railroad vehicle, or any self-propelled vehicle, aircraft, or motor boat, the property of another, without the consent of the owner of such, but without the intent to permanently deprive the owner thereof, shall be guilty of an aggravated misdemeanor.  A violation of this section may be proved as a lesser included offense on an indictment or information charging theft.

State's proof must support at least a fair inference of guilt as to each element of the crime. *State v. LaPointe*, 418 N.W.2d 49, 51 (Iowa 1988).

### III.   Analysis

Garland points first to the marshalling instruction for theft. Here's how the court instructed the jurors on that charge:

> The State must prove all the following elements of Theft:
> 1. On or about the 4th day of October, 2021, the defendant intentionally took possession or control of an automobile belonging to Bobbie Carter.
> 2. The possession or control was without the consent of Bobbie Carter.
> 3. The defendant did so with the specific intent [to] permanently deprive Bonnie Carter of the automobile.
> If the State has proved all of the elements, the defendant is guilty of Theft. If the State has failed to prove only element 3, the defendant is guilty of the lesser included offense of Operating Without Owner's Consent. If the State has failed to prove either element 1 or 2, the defendant is not guilty.

The jury found Garland guilty of operating the Honda without consent. This means the State did not prove element three: his specific intent to permanently deprive his mother of her car. But Garland contends the State also failed to prove element two: his possession or control was without his mother's consent.[2]

To assess Garland's claim, we turn to Deputy Keeler's testimony. On direct examination, he told the jury that Garland's mother and stepfather were the owners of the vehicle. When the prosecutor asked if the mother and stepfather had "ever

---

[2] Although not the focus of Garland's appeal, general criminal intent is an element of section 714.7. "This is true even though the section speaks of intent only in terms of a characteristic not required: permanence of purpose need not be shown." *State v. McCormack*, 293 N.W.2d 209, 212 (Iowa 1980). So the State had the burden to prove beyond a reasonable doubt that Garland acted with criminal intent. In other words, if he reasonably believed he had his mother's permission to drive the Honda, he would not be guilty of the offense charged. *See State v. Drummer*, 117 N.W.2d 505, 509 (Iowa 1962).

recanted or withdrawn their charge that [Garland] stole their vehicle," Keeler answered: "Not to my knowledge. I have not been contacted about anything."

But the specifics changed a bit on cross-examination. Deputy Keeler testified that the registered owner of the Honda was Garland's mother, Bobbie. Keeler did not know if the stepfather, Scott, was also a registered owner. Keeler added that Bobbie was the owner "on paper," but the deputy believed that "when you're married it is joint property." He added: "That's why I took the report."

As cross-examination continued, Keeler confirmed that the stepfather reported the theft after arguing with Garland. Keeler did not know if Bobbie was present when Scott called the sheriff. Defense counsel then asked: "[I]sn't it possible she gave Bo Garland the authority to drive that vehicle?" Keeler said that is not what Scott reported to him at the time. Next came this exchange:

> Q. So you don't know whether Bobbie Carter gave Mr. Garland permission to drive that vehicle, do you? A. No, I don't.
> Q. And has—Bobbie Carter is the registered owner of that vehicle. If she had given Mr. Garland permission to drive that vehicle, then he did not, in fact, steal that car. Would that be a fair statement? A. Yes, it would be.

Keeler confirmed that he never spoke to Bobbie. But the deputy continued to emphasize his theory on jointly owned property, leading to this exchange:

> Q. Okay. But if two people own property and one says, I don't want you to take it and the other says you can, then that person has the authority to take that—to use that property, correct? A. Yes. But being the registered owner also has no play here.
> Q. So you don't think it's at all important that Bobbie Carter was the owner of that vehicle? A. No.
> Q. She could have given Bo permission to drive that car, correct? A. Yes.
> Q. But you don't know whether she did or didn't? A. That is correct.

The prosecutor tried to rehabilitate Keeler on redirect, asking if Garland told the deputy that his mother consented to him driving the Honda.  Keeler testified that Garland did not say he had permission to take the Honda when the deputy told him he was being charged with theft.[3]

On appeal, Garland argues that "silence" as to whether he had permission to drive the Honda did not equate to proof beyond a reasonable doubt that he drove the car without his mother's consent.  We agree.  It was not Garland's burden to show consent.  It was the State's burden to show lack of consent.  The State could not do so when its only witness had not spoken to Bobbie—the Honda's registered owner.

Which brings us to the prosecution's argument on jointly owned property.  On appeal, the State relies on the deputy's belief that the car was "joint property" because Scott and Bobbie Carter were married.  From that premise, the State argues "[t]he jury could infer that [Bobbie] Carter never gave [Garland] consent to take the car because her husband reported it stolen and she never disputed it."  Again, we disagree that Scott's report of a stolen vehicle and silence from Bobbie is the same as proof that Garland did not have consent from the car's owner.  As Garland asserts on appeal, the deputy's belief that the Honda was marital property does not prove Scott was its owner.

---

[3] It is unclear when Keeler told Garland about the theft charge.  The deputy's dash cam recording does not include a recitation of the charges.  But when the deputy does ask Garland if there's any drugs in the vehicle, Garland replies: "It's my mom's vehicle, you'll have to ask her."  Garland's response does not suggest that he took the Honda without her consent.

For purposes of the motor vehicle chapter, "owner" means "a person who holds the legal title of a vehicle." Iowa Code § 321.1(49). Bobbie was the only owner. Indeed, the marshalling instruction on theft described the car as belonging to Bobbie Carter, not Bobbie and Scott Carter. And the State did not object to the instruction. So it is the law of the case. *See State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009).

Despite that instruction's wording, the State maintains it could secure a conviction without Bobbie testifying. In support, the State cites two of our unpublished cases in which we upheld operating-without-consent convictions when the title holder did not testify. First, in *State v. Melton*, we held that the State offered sufficient evidence that Melton drove a car registered to his girlfriend's father without the owner's consent though the father did not testify. No. 12–0370, 2013 WL 531116, at *1–2 (Iowa Ct. App. Feb. 13, 2013). Second, in *State v. Hofer*, we held that the State offered sufficient evidence that Hofer lacked consent to drive a concrete mixing truck when the titleholder, Ready Mix USA, transferred control of the truck to Housby Mack, and only a representative of Housby Mack testified. No. 19–0823, 2020 WL 3264398, at *3–4 (Iowa Ct. App. June 17, 2020).

Neither case helps the State. True, in *Melton* and *Hofer* the registered owner did not testify. On that narrow point, the State is right—an owner's testimony is not the only way to prove lack of consent. As we said in *Melton*, the State can rely on circumstantial evidence. 2013 WL 531116, at *2. For instance, it was enough that Melton thought his girlfriend was the owner, took the keys from her hand after assaulting her, and admitted that he did not have her permission to drive the car. *Id.*

But that's not the case here. The State did not offer circumstantial evidence that Garland was mistaken about who owned the Honda or acknowledged that he did not have permission to drive it. And unlike *Hofer*, the Honda's title holder had not transferred its possession and control to another business with a representative who testified to the lack of consent. 2020 WL 3264398, at *3–4. Unlike *Melton* and *Hofer*, the owner and the person who controlled the car were one in the same: Garland's mother. Without any evidence that she denied him permission to drive it, the State did not meet its burden.

The State also relies on an unpublished case from the Washington Court of Appeals with similar facts. In *State v. Kimbrough*, the appellate court upheld a conviction for taking a motor vehicle without permission when the defendant-son asked to take a vehicle from his parents' home and "his father said no." No. 53953–5–II, 2021 WL 798043, at *1 (Wash. App. Mar. 2, 2021). Kimbrough argued that his mother was the vehicle's sole owner, but there was no evidence that she denied him permission to drive it. *Id.* The court highlighted the father's testimony that although the car was registered in his wife's name, he described it as "our vehicle" and "community property." The court held that "a reasonable juror could find that Kimbrough took the vehicle "without the permission of the owner or person entitled to possession." *Id.* at *3.

We are not persuaded by *Kimbrough* because the language of Washington's statute is broader. Under Iowa's statute, the State had to prove Garland took control of the car "without the consent of the owner." *See* Iowa Code § 714.7. But under Washington's statute, Kimbrough could be guilty of taking a motor vehicle without permission if he did not have "the permission of the owner

*or person entitled to possession.*"  Revised Code of Wash. 9A.56.075(1) (2019) (emphasis added).  It makes sense that when Kimbrough's father said he could not take the car, Kimbrough had been denied permission from a person entitled to possession of the car—even if the father wasn't the owner.  By contrast, our record does not show that Garland's mother, the car's only owner, denied him consent.

"The State's burden is to prove what it says happened."  *State v. Morales*, No. 22-0208, 2023 WL 152343, at *2 (Iowa Ct. App. Jan. 11, 2023) (citing *In re Winship*, 397 U.S. 358, 364 (1970)).  The State did not prove beyond a reasonable doubt that Garland lacked his mother's consent to take possession or control of her Honda.  So we reverse his conviction and remand to dismiss the charge.

**REVERSED AND REMANDED FOR DISMISSAL.**